1   THOMAS E. GEIDT (SB# 080955)
    tomgeidt@paulhastings.com
2   ZACHARY P. HUTTON (SB# 234737)
    zachhutton@paulhastings.com
3   ZINA DELDAR (SB# 282637)
    zinadeldar@paulhastings.com
4   PAUL HASTINGS LLP
    55 Second Street
5   Twenty-Fourth Floor
    San Francisco, CA  94105-3441
6   Telephone:  1(415) 856-7000
    Facsimile:  1(415) 856-7100
7
    Attorneys for Defendant
8   EDEN MEDICAL CENTER

9

10                      UNITED STATES DISTRICT COURT

11                     NORTHERN DISTRICT OF CALIFORNIA

12

13   ERIKA L. LOUD, individually and on behalf      CASE NO. 12-CV-02936 EDL
     of all others similarly situated,
14                                                   **DEFENDANT EDEN MEDICAL
                        Plaintiff,                   CENTER'S NOTICE OF MOTION AND
15                                                   MOTION FOR PARTIAL SUMMARY
          vs.                                        JUDGMENT**
16
17   EDEN MEDICAL CENTER, a California
     business entity, and DOES ONE through       Date:        Tuesday, September 3, 2013
18   TEN,                                         Time:        9:00 a.m.
                                                  Dept:        Courtroom E
19                      Defendant.                Judge:       Hon. Elizabeth D. Laporte

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.     NOTICE OF MOTION ................................................................................ 1

II.    RELIEF REQUESTED ............................................................................... 1

III.   ISSUES TO BE DECIDED AND SUMMARY OF ARGUMENT ................... 1

IV.   STATEMENT OF THE FACTS ................................................................... 3

    A.     Loud's Employment With Eden ........................................................ 3

    B.     Eden's Pay Practices Pertaining To Loud's Employment ................... 5

V.    POINTS AND AUTHORITIES:  THE COURT SHOULD GRANT PARTIAL
SUMMARY JUDGMENT IN EDEN'S FAVOR ON LOUD'S THIRD, FOURTH,
FIFTH, SIXTH, AND EIGHTH CLAIMS ...................................................... 6

    A.     Legal Standard ................................................................................ 6

    B.     Loud's Claim For Overtime Compensation Under California Law Fails As
A Matter Of Law ............................................................................ 7

        1.     The collective bargaining exemption in section 514 of the
California Labor Code bars Loud's claim for additional overtime
pay ................................................................................... 7

        2.     In any event, Loud's California overtime claim fails because she
has received all overtime pay that would be due to her under
California law ..................................................................... 8

    C.     Loud's Claim For Overtime Compensation Under Federal Law Likewise
Fails Because, As a Matter of Law, Eden Correctly Calculated Her Regular
Rate Of Pay .................................................................................. 13

    D.     Loud's Claim For Reporting Time Pay Fails As A Matter of Law .......... 13

        1.     As a matter of law, Loud is not owed reporting time pay for the
days she attended meetings ................................................. 14

        2.     Likewise, Loud cannot show an entitlement to reporting time pay
for days on which she was scheduled to work eight hours ......... 16

    E.     Loud's Claim For Allegedly Deficient Wage Statements Fails As A Matter
of Law ......................................................................................... 18

        1.     Loud's wage statements contain the required items in section 226(a)...... 18

        2.     Moreover, Loud has not suffered a cognizable injury from Eden's
pay stubs ......................................................................... 19

    F.     Loud's PAGA Claim Fails Because Loud Never Provided Proper Notice
Of Her Claim To The Labor And Workforce  Development Agency ................. 21

VI.   CONCLUSION ........................................................................................ 24

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Adickes v. S.H. Kress & Co.,*
  398 U.S. 144 (1970) ................................................................................ 6

*Alcantar v. Hobart Serv.,*
  2013 WL 228501 (C.D. Cal. Jan. 22, 2013) ................................... 22, 23

*Aleman v. AirTouch Cellular,*
  209 Cal. App. 4th 556 (2012) ................................................ 2, 14, 15, 16

*Allis-Chalmers Corp. v. Lueck,*
  471 U.S. 202 (1985) .............................................................................. 11

*Anderson v. Liberty Lobby, Inc.,*
  477 U.S. 242 (1986) ................................................................................ 6

*Archila v. KFC U.S. Props., Inc.,*
  420 Fed. Appx. 667 (9th Cir. 2011) ............................................... 22, 23

*Arias v. Superior Court,*
  46 Cal. 4th 969 (2009) .......................................................................... 22

*Caliber Bodyworks, Inc. v. Superior Court,*
  134 Cal. App. 4th 365 (2005) ............................................................... 21

*Cathcart v. Sara Lee Corp.,*
  2011 WL 5981849 (N.D. Cal. Nov. 30, 2011) ........................................ 7

*Celotex Corp. v. Catrett,*
  477 U.S. 317 (1986) ................................................................................ 6

*Elliot v. Spherion Pac. Work, LLC,*
  572 F. Supp. 2d 1169 (C.D. Cal. 2008) ................................................ 19

*Helm v. Alderwoods Group, Inc.,*
  696 F. Supp. 2d 1057 (N.D. Cal. 2009) ................................................ 21

*John v. City of El Monte,*
  505 F.3d 907 (9th Cir. 2007) .................................................................. 6

*Lopez v. Wendy's International, Inc.,*
  2011 U.S. Dist. LEXIS 151513 (C.D. Cal. Sept. 19, 2011) .................. 20

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,*
  475 U.S. 574 (1986) ................................................................................ 7

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Nelson v. Pima Community College*,
83 F.3d 1075 (9th Cir. 1996).......................................................................... 7, 16

*Nguyen v. Baxter Healthcare Corp.*,
2011 U.S. Dist. LEXIS 141135 (C.D. Cal. Nov. 28, 2011) .................................. 20

*Ovieda v. Sodexo Operations, LLC*,
No. 12-cv-01750 (C.D. Cal. July 3, 2013) ......................................................... 23

*Paige v. Henry J. Kaiser Co.*,
826 F.2d 857 (9th Cir. 1987)............................................................................. 11

*Price v. Starbucks Corp.*,
192 Cal. App. 4th 1136 (2011) ........................................................ 16, 19, 20, 24

*Silva v. U.S. Bancorp*,
2011 WL 7096576 (C.D. Cal. Oct. 6, 2011) .................................................. 22, 23

*Soto v. Castlerock Farming & Trans. Inc.*,
2012 WL 1292519 (E.D. Cal. Apr. 16, 2012)................................................. 22, 23

*Swanson v. USProtect Corp.*,
2007 WL 1394485 (N.D. Cal. May 10, 2007) ................................................ 22, 23

*York v. Starbucks Corp.*,
2011 U.S. Dist. LEXIS 118310 (C.D. Cal. Aug. 5, 2011) ................................... 20

**STATUTES**

29 U.S.C.
§ 185................................................................................................................ 11
§ 207................................................................................................................ 13

Cal. Lab. Code
§ 226(a) ......................................................................................... 3, 18, 19, 20
§ 226(e) ......................................................................................... 19, 20, 21
§ 226(e)(2)(B) .................................................................................................. 20
§ 510................................................................................................................. 7
§ 511................................................................................................................. 7
§ 514.................................................................................................. 2,7, 8 12
§ 2699.3(a) ...................................................................................................... 23
§ 2699.3(a)(1) ............................................................................................ 21, 22
§ 2699.3(a)(2) .................................................................................................. 22

Case No. 12-CV-02936 EDL

-iii-

LEGAL_US_W # 75540845.2

DEFENDANT'S NOTICE OF MOTION AND
MOTION FOR PARTIAL SUMMARY
JUDGMENT

# TABLE OF AUTHORITIES
**(continued)**

**Page(s)**

Fed. R. Civ. P.
    56 ................................................................................................................................ 1, 2
    56(a) .............................................................................................................................. 6

**OTHER AUTHORITIES**

29 C.F.R. § 778.115 ..................................................................................................... 8, 10

29 C.F.R. § 778.207 ......................................................................................................... 13

2002 Update of DLSE Enforcement Policies and Interpretations Manual (Revised),
    § 49.2.5 (June 2002) ....................................................................................................... 8

Cal. Ch. 844 at 90, Assemb. Bill 1744, 2011-2012 Reg. Sess. (Sept. 30, 2012) .......................... 20

Wage Order 5-2001 ......................................................................................................... 15

Wage Order 5-2001, § 5(A). ........................................................................................... 15

Wage Order 5-2001, § 5(C)(3). ...................................................................................... 15

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

I.        **NOTICE OF MOTION**

TO PLAINTIFF AND HER ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on Tuesday, September 3, 2013, at 9:00 a.m., or as soon thereafter as the matter may be heard, before the Honorable Elizabeth D. Laporte in Courtroom E of the United States District Court, Northern District of California, located at 450 Golden Gate Avenue, 15th Floor, San Francisco, California, Defendant Eden Medical Center ("Eden") will and hereby does move for partial summary judgment in its favor pursuant to Rule 56 of the Federal Rules of Civil Procedure.

II.       **RELIEF REQUESTED**

Eden moves the Court for an order granting partial summary judgment in favor of Eden and against Plaintiff Erika Loud on five of the causes of action alleged in Loud's First Amended Complaint ("FAC").  Specifically, Eden requests that the Court dismiss the following claims:  (1) Loud's third claim alleging failure to pay proper overtime compensation under California law; (2) Loud's fourth claim alleging failure to pay proper overtime compensation under the Fair Labor Standards Act ("FLSA"); (3) Loud's fifth claim alleging failure to pay reporting time pay under California law; (4) Loud's sixth claim alleging failure to provide proper pay stubs under California law; and (5) Loud's eighth claim alleging civil penalties under the California Private Attorneys General Act ("PAGA").

Eden makes this motion pursuant to Federal Rule of Civil Procedure 56, upon the grounds that there is no genuine dispute as to any material fact concerning any of the five claims enumerated above, and Eden is entitled to judgment as a matter of law.  The motion is based on this Notice, the points and authorities set forth herein, the accompanying declarations of Thomas E. Geidt, Christine Green, and Karen Hawley, and exhibits attached thereto, Request for Judicial Notice, and such evidence and argument as may be presented at the hearing on the motion.

III.      **ISSUES TO BE DECIDED AND SUMMARY OF ARGUMENT**

This is an employment case brought by a hospital nursing assistant against her employer, Eden Medical Center.  At all relevant times, Plaintiff Loud has been represented by a labor organization, the United Healthcare Workers – SEIU.  Her complaint asserts various federal and

DEFENDANT'S NOTICE OF MOTION AND
MOTION FOR PARTIAL SUMMARY
JUDGMENT

state wage-and-hour claims, including a claim that Eden failed to properly calculate the overtime pay due her on days when she worked overtime.

The issues to be decided by this motion are:

(1)  Whether Loud's California overtime claim is barred by the exemption found in California Labor Code section 514 for employees who are covered by a collective bargaining agreement;

(2)  Whether, alternatively, Loud's California overtime claim is barred by her inability to demonstrate that Eden ever miscalculated her overtime pay;

(3)  Whether Loud's federal overtime claim likewise fails as a matter of law because she cannot show that Eden ever miscalculated the overtime pay due her under the FLSA;

(4)  Whether Loud was properly paid under California law for the time she spent attending meetings, thus barring her California claim for reporting time pay as a matter of law;

(5)  Whether Loud's claim for reporting time pay, to the extent it is based on scheduled eight-hour shifts, fails as a matter of law because she cannot demonstrate that Eden ever sent her home early without paying her at least four hours' pay;

(6)  Whether Loud's claim alleging that Eden failed to provide proper wage statements must be dismissed on the basis that her wage statements have fully complied with California law as a matter of law; and

(7)  Whether her claim for civil penalties under PAGA must be dismissed because of her failure to properly exhaust her administrative remedies before bringing her claim in court.

As will be shown, each of the foregoing claims fails to present a triable issue under Rule 56.  Loud's California overtime claim fails, because she falls squarely within the collective bargaining exemption found in Labor Code section 514.  At all times, she has been covered by a collective bargaining agreement that (1) addresses wages, hours of work, and conditions of employment; (2) provides premium pay for all overtime hours worked; and (3) pays Loud an hourly rate that exceeds the California minimum wage by more than 30%.  In any event, Loud is unable to show any instance in which the amount of overtime pay she received was less – even by a penny – than the amount she would be due under California's overtime requirements.  For the

1   same reason, her claim for underpaid overtime under the FLSA fails as a matter of law – she

2   simply cannot show any underpayment of overtime.

3        Loud's claim for reporting time pay must be dismissed to the extent it is based on the time

4   she spent attending meetings on her "off" days.  The meetings she attended were pre-scheduled

5   and always lasted at least half as long as scheduled.  Loud was fully paid for the time she spent

6   attending the meetings.  Therefore, the court's ruling in *Aleman v. AirTouch Cellular*, 209 Cal.

7   App. 4th 556 (2012), compels dismissal of this claim.

8        To the extent Loud claims she is owed reporting time pay for scheduled eight-hour shifts

9   that were cut short, her claim fails as a matter of law.  Although there have been a few times

10  during her employment when she worked less than a full eight-hour shift, she cannot point to any

11  instance in which Eden sent her home early without paying her at least four hours' pay.

12       Loud's pay stub claim fails because the pay stubs that Eden provided her have at all times

13  fully complied with the requirements of California's pay stub law, Labor Code section 226(a).

14  Moreover, Loud cannot show that she suffered any "injury" as a result of the format or contents

15  of Eden's pay stubs.

16       Finally, Loud's PAGA claim must be dismissed because she never notified the California

17  Labor & Workforce Development Agency ("LWDA") of the facts and theories upon which her

18  proposed PAGA suit was to be based.  Under well-established law, her purported PAGA letter to

19  the LWDA does not satisfy the requirements of the statute – or even come close – and it now is

20  too late for her to remedy the deficiency.

## IV.   STATEMENT OF THE FACTS

### A.   Loud's Employment With Eden.

23       Eden hired Loud on or around August 22, 2011, as a per diem float nursing assistant at its

24  hospital in Castro Valley, California, reporting to its Director Resource/Staffing, Karen Hawley.

25  (Green Decl. ¶ 4 (July 12, 2013); Hawley Decl. ¶ 2 (July 11, 2013); Geidt Decl., ¶ 2 (July 15,

26  2013), Exh. A (hereinafter "Loud Dep.") 22:2-4; 24:25-25:11.)  At the time of her hire, Loud

27  earned a base hourly rate of $23.19.  (Green Decl. ¶ 4.)

28

DEFENDANT'S NOTICE OF MOTION AND
MOTION FOR PARTIAL SUMMARY
JUDGMENT

1    Loud has been classified as a "per diem" employee throughout her employment, meaning

2    that she is essentially "on call" and generally works less than a full-time schedule, on an as-

3    needed basis.  (Loud Dep. 22:9-21; 25:12-18.)  Loud notifies Eden in advance of her availability,

4    and Eden schedules her to work as a floater in various hospital departments, depending on the

5    hospital's needs.  (*See id.*)

6    Throughout most of her employment, Loud has been assigned to work eight-hour shifts on

7    either the evening shift (generally scheduled to work from 3 p.m. to 11:30 p.m.) or the night shift

8    (generally scheduled to work from 11 p.m. to 7:30 a.m.).  (Hawley Decl. ¶ 3.)

9    The terms and conditions of Loud's employment are governed by a collective bargaining

10   agreement ("CBA") between Eden and the United Healthcare Workers – SEIU ("SEIU").[1]

11   (Green Decl. ¶ 5; Geidt Decl. ¶ 3 Exh. B (hereinafter "CBA"); Loud Dep. 33:19-25; 34:15-18;

12   35:1-9; 42:23-25; 43:5-9.)  The CBA establishes the wage rates for nursing assistants and other

13   bargaining unit employees, the hours of work, and other terms of employment.  (CBA, §§ 11, 13,

14   Appendices D-F; Loud Dep. 37:25-39:5; 41:7-18; 41:21; 41:24-42:3.)

15   In December 2012, Loud and the other employees employed at Eden's Castro Valley

16   hospital transferred to a newly-constructed hospital in Castro Valley and, as part of a corporate

17   transaction, became employed by a different legal entity, Sutter Medical Center Castro Valley

18   d.b.a. Eden Medical Center ("SMCCV").  (Green Decl. ¶ 2.)  Loud and her co-workers filled out

19   new-hire paperwork reflecting this change in affiliation, and since then, Loud's wage statements

20   have reflected SMCCV as her employer.[2]  (*See* Green Decl. ¶ 2; Geidt Decl. ¶ 8, Exh. G.)  Loud's

21   employment continues to be governed by a CBA, with SEIU as her bargaining agent.  (Green

22   Decl. ¶ 5.)

---

24   [1]  The CBA as of Loud's hire date was effective on its face from December 20, 2009 to December
     19, 2012.  Prior to the expiration date in late 2012, Eden and the SEIU agreed on a new contract,
25   and SEIU's membership ratified the new contract.  Although the new CBA has not yet been
     finalized and published, the parties are continuing to operate under the terms of the old CBA, as
26   modified by the changes adopted in the newly-ratified agreement.  (Green Decl. ¶ 5.)

27   [2]  Eden denies that as of today, Loud is employed by the entity named in her FAC, Eden Medical
     Center.  However, Eden assumes and concedes – for the purpose of this motion only – that
28   Defendant Eden Medical Center has been, and still is, her employer for the period of time from
     her initial hire date in August 2011 to the present.

1

### B.      Eden's Pay Practices Pertaining To Loud's Employment.

2

Loud is classified as a non-exempt employee entitled to overtime pay. (Loud Dep. 31:12-

3

32:6.) The applicable CBA provides that Loud and other covered employees are entitled to

4

overtime pay at time-and-one-half after working more than eight hours in a day or 40 hours in a

5

week. (CBA, § 13.1.) The CBA requires payment of double-time wages for any work in excess

6

of 12 hours in a day or for any work performed on the seventh consecutive day of work in a

7

workweek. (*Id.*)

8

Pursuant to the CBA, Loud also receives shift differential pay equivalent to $1.00 per hour

9

for hours worked on the evening (or "swing") shift, which the CBA defines as a shift that begins

10

on or after 2 p.m. but before 11 p.m. (CBA, § 11.11; Green Decl. ¶ 6.) She receives a shift

11

differential of $1.25 per hour for hours worked on the night shift, which the CBA defines as a

12

shift that begins on or after 11 p.m. but before 6 a.m. (*Id.*; Loud Dep. 37:12-15; 37:25-39:5;

13

40:24-41:3.) It is Eden's policy to include shift differential pay in the regular rate of pay when

14

calculating overtime. (Green Decl. ¶ 6.) As will be discussed more fully below, when Loud

15

works at two or more hourly rates of pay during the same workweek, Eden is required to, and

16

does, calculate a blended overtime premium rate based on the total earnings and the hours worked

17

in the week at each rate.

18

Loud receives a paycheck every other Friday, based on a bi-weekly pay period that ends

19

on the prior Saturday. (*See* Loud Dep. 83:9-17; 96:14-17.) The payroll workweek runs from

20

Sunday at 12:01 a.m. to the following Saturday at midnight. (Green Decl. ¶ 9.) Each workday

21

runs from midnight to midnight. (*Id.*) However, if an employee's shift starts on one workday and

22

extends beyond midnight, Eden counts all the hours worked on the shift as though they had been

23

worked on the day the shift began. (*Id.*)

24

With each paycheck, whether paid manually or by direct deposit, Eden issues Loud a

25

wage statement reflecting the wages earned during that pay period. (Loud Dep. 82:4-9.) The

26

wage statements contain the gross wages earned, total hours worked in the pay period, an

27

itemization of the deductions taken from gross wages, the net wages earned, the inclusive dates of

28

the pay period, Loud's name and employee identification number, the name of the legal entity

1   that has employed her (first Eden Medical Center and more recently Sutter Medical Center Castro

2   Valley) and its address, all applicable hourly rates in effect during the pay period, and the

3   corresponding number of hours worked at each rate.  (Geidt Decl. ¶ 8, Exh. G; Loud Dep. 233:4-

4   235:1; FAC (Nov. 8, 2012), ECF No. 20-1, Exh. 1.)

5          It is Eden's policy and practice to pay "reporting time pay" when it is due in accordance

6   with California law.  (Green Decl. ¶ 8.)  The CBA also requires that Eden pay employees four

7   hours' pay if they are scheduled to work at least four hours and report to work, but no work is

8   available.  (*Id.*; CBA, § 14.)  Eden maintains a pay code (pay code # 134) to record reporting time

9   pay.  (Green Decl. ¶ 8.)  If an employee is scheduled to come in to attend a staff meeting, training

10  session or other meeting of less than four hours' duration, Eden's practice is to pay the employee

11  for the time spent in the meeting.  (*Id.*)

## V.   POINTS AND AUTHORITIES:  THE COURT SHOULD GRANT PARTIAL SUMMARY JUDGMENT IN EDEN'S FAVOR ON LOUD'S THIRD, FOURTH, FIFTH, SIXTH, AND EIGHTH CLAIMS

### A.   Legal Standard

15         A court may grant summary judgment on "each claim or defense—or the part of each

16  claim or defense—on which summary judgment is sought."  Fed. R. Civ. P. 56(a).  Summary

17  judgment should be granted if "there is no genuine dispute as to any material fact and the movant

18  is entitled to a judgment as a matter of law."  *Id*; *see also Celotex Corp. v. Catrett*, 477 U.S. 317,

19  322, 325 (1986).  The party seeking summary judgment bears the initial burden of demonstrating

20  the absence of a genuine issue of material fact.  *Celotex*, 477 U.S. at 325.  If, however, as here,

21  the *nonmoving* party bears the burden of proof at trial, the moving party may discharge its burden

22  of production in one of two ways:  (1) the moving party may show there is an absence of evidence

23  to support the nonmoving party's case, *see id.*; *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S.

24  242, 248, 252 (1986) ("The mere existence of a scintilla of evidence in support of the plaintiff's

25  position will be insufficient; there must be evidence on which the jury could reasonably find for

26  the plaintiff."); or (2) the moving party may also negate an essential element of the opposing

27  party's claim or defense, *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-60 (1970); *see also*

28  *John v. City of El Monte*, 505 F.3d 907, 912 (9th Cir. 2007) ("[T]he movant's uncontradicted

1  factual allegations ordinarily are accepted.").

2      While the court must examine all the evidence in the light most favorable to the

3  nonmovant, conclusory or speculative testimony is insufficient to defeat summary judgment.

4  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) ("When the

5  moving party has carried its burden under Rule 56(c), its opponent must do more than simply

6  show that there is some metaphysical doubt as to the material facts.") (footnote omitted); *see also*

7  *Nelson v. Pima Community College*, 83 F.3d 1075, 1081-82 (9th Cir. 1996) ("[M]ere allegation

8  and speculation do not create a factual dispute for purposes of summary judgment.").

9      **B.   Loud's Claim For Overtime Compensation Under California Law Fails As A
        Matter Of Law.**

10          **1.   The collective bargaining exemption in section 514 of the California
            Labor Code bars Loud's claim for additional overtime pay.**

11  Section 514 of the California Labor Code provides:

12

13  Sections 510 and 511 do not apply to an employee covered by a valid collective
    bargaining agreement if the agreement expressly provides for the wages, hours of
    work, and working conditions of the employees, and if the agreement provides

14  premium wage rates for all overtime hours worked and a regular hourly rate of pay
    for those employees of not less than 30 percent more than the state minimum

15  wage.

16      The sections referenced in section 514 (Labor Code sections 510 and 511) contain,

17  respectively, California's general overtime provisions and its overtime provisions relating to

18  employees who have adopted an alternative workweek schedule.  Thus, employees who are

19  covered by a CBA that meets the criteria of section 514 are exempt from California's overtime

20  provisions.  *See, e.g.*, *Cathcart v. Sara Lee Corp.*, 2011 WL 5981849 (N.D. Cal. Nov. 30, 2011)

21  (rejecting plaintiff's argument that the section 514 exemption applies only to employees working

22  alternative workweek schedules and holding plaintiff's California overtime suit barred by the

23  exemption).

24      It is undisputed that Loud, at all relevant times, has been covered by a CBA that squarely

25  meets the criteria of section 514.  First, the CBA expressly provides for the wages, hours of work,

26  and working conditions of the employees in Loud's bargaining unit.  (Green Decl. ¶ 5; *see, e.g.*,

27  CBA, §§ 11, 13-14, Appendices D-F.)  Second, the agreement provides premium wage rates for

28  all hours worked beyond eight in a day or 40 in a week.  (CBA, § 13.)  Finally, the CBA provides

1   for Loud to receive a regular hourly rate of pay of not less than 30% more than the California

2   minimum wage, which equates to $10.40 ($8.00 minimum wage x 130%).  (CBA, Appendices D-

3   F.)  At all relevant times, Loud's base hourly rate has been $23.19 or more.  (Green Decl. ¶ 4.)

4       Without question, therefore, Loud's California overtime claim is barred by section 514,

5   and her overtime claim must be dismissed on that basis alone.

6       **2.    In any event, Loud's California overtime claim fails because she has
         received all overtime pay that would be due to her under California

7       law.**

8       Even if the section 514 exemption were not applicable, Loud's California overtime claim

9   still could not survive summary judgment, because Eden properly calculated and paid Loud all

10  overtime pay that would be due to her under California law.[3]

11      Under California law, whenever an hourly employee performs work at two rates of pay

12  during a workweek, the proper method of calculating overtime for that week is the weighted-

13  average method, which involves dividing the total straight-time compensation for the week by the

14  total number of hours worked in the week, and then dividing the resulting sum in half to produce

15  the correct blended half-time premium rate.  *See* 2002 Update of DLSE Enforcement Policies and

16  Interpretations Manual (Revised), § 49.2.5 (June 2002), available at

17  http://www.dir.ca.gov/dlse/DLSEManual/dlse_enfcmanual.pdf (citing the Department of Labor

18  ("DOL") regulations at 29 C.F.R. § 778.115).

19      In accordance with the union contract, Loud received differing shift differential rates

20  depending on when her shifts started:  her base hourly rate for work on the day shift, a swing-shift

21  rate (an extra $1 per hour), and a night-shift rate (an extra $1.25 per hour).  (Green Decl. ¶ 6;

22  CBA, § 11.11; Loud Dep. 104:10-105:4.)  Eden included her shift differential pay in the regular

23  rate of pay for purposes of calculating overtime, as required by federal and state law.  (Green

24  Decl. ¶ 6.)  When Loud worked on two different shifts in the same workweek, Eden properly

---

26
27  [3]  Loud does not base her overtime claim on any alleged failure by Eden to pay overtime for all
     overtime hours that she worked; rather, she bases her claim solely on the theory that Eden
     miscalculated the *amount* of overtime that it paid her for the overtime hours that she worked.
28   (FAC ¶¶ 19, 37, and 39; Loud Dep. 125:24-126:12.)

---

1  calculated her overtime pay based on the appropriate weighted-average method.

2         In her FAC at paragraph 19, Loud alleges only one specific instance in which Eden

3  purportedly miscalculated her overtime:  a claimed underpayment of $2.84 for the workweek

4  ending May 5, 2012, based on her claim that her overtime rate for that week should have been

5  $37.65 rather than the $37.38 rate she was paid.  (FAC ¶ 19.)  This, however, is demonstrably

6  incorrect, for the reasons that follow.

7         Loud's base rate of pay as of May 2012 was $23.85.  (Green Decl. ¶ 7; Loud Dep. 114:19-

8  115:1.)  Her swing-shift rate, applicable when she worked shifts that began between 2 and 11

9  p.m., was $24.85, and her night-shift rate, applicable when she worked shifts that began between

10  11 p.m. and 6 a.m., was $25.10.  (Id.; Loud Dep. 103:3-13; 114:19-115:1.)[4]

11         For the biweekly pay period in question, it is undisputed that Loud worked eight hours in

12  Week 1 of the pay period and 40 hours in the first five workdays of Week 2 of the pay period, all

13  payable at the night shift rate of $25.10 per hour.  (Loud Dep. 93:20-94:8; 94:19-25; 97:8-13;

14  97:20-98:2; 100:18-101:1; 101:10-17; Geidt Decl. ¶ 7, Exh. F.)  This is what Eden paid her for

15  those 48 hours.  (Geidt Decl. ¶ 6, Exh. E.)  It also is undisputed that Loud worked 10.5 overtime

16  hours at the end of Week 2, as a result of working on a sixth day in the workweek, from 8:30 p.m.

17  on Saturday, May 5, 2012, through 7:30 a.m. on Sunday, May 6, 2012 (11 hours minus a 30-

18  minute meal period).  (Loud Dep. 101:18-102:4; 102:9-14; 102:18-24; 105: 5-8; Geidt Decl. ¶ 7,

19  Exh. F.)[5]  Under the CBA, Eden owed her $24.85 per hour as her straight-time rate for those 10.5

20  hours, because her shift began between 2 and 11 p.m.  (See CBA, § 11.11.)

21         The overtime premium for Loud's 10.5 overtime hours in Week 2 thus was necessarily a

22  blended rate reflecting the two straight-time rates that applied to her hours worked during the

23  week.  The proper calculation of her overtime premium due for the week, therefore, was:  her

---

[4] Loud testified in her deposition that she has no information to indicate that these are not the correct rates.  (Loud Dep. 114:19-115:1.)

[5] Loud actually worked only 3.5 hours on May 5, from 8:30 p.m. to midnight.  However, Eden credited her with all the hours that extended past midnight as though they all had been worked on May 5.  (See Green Decl. ¶ 9.)

1   total straight-time earnings divided by her total hours worked (to get the regular rate), divided by

2   two (to get the half-time premium rate), multiplied by the number of overtime hours that she

3   worked in the week (10.5 hours).  29 C.F.R. § 778.115.  Eden properly calculated her half-time

4   premium rate for this week at $12.53 ((40 hours x $25.10) + (10.5 hours x $24.85) divided by

5   50.5 hours, divided by 2).[6]  This half-time premium, added to the base rate of $24.85 for the 10.5

6   overtime hours, resulted in an overtime rate of $37.38 ($24.85 + $12.53).  This is precisely the

7   amount she was paid, as is reflected on her pay stub for that pay period.  (Geidt Decl. ¶ 6, Exh.

8   E.)

9           In her deposition, Loud did not disagree with the arithmetic as described above, nor could

10  she say that there was anything incorrect about the way Eden calculated her overtime pay.

11          Q.      Are you able to point – point me to any – anything in the union contract,
                    anything in any documents to indicate that that's not the correct amount of
12                  overtime pay that was due to you for that week?

13          A.      I don't know.

14  (Loud Dep. 122:10-14; *see also* 119:4-121:17; 122:22-25; 123:10-124:11; 124:24-125:13.)

15  Loud's claim in her FAC that Eden should have paid her overtime hours at a rate of $37.65 (1.5 x

16  $25.10) disregards the fact that all 10.5 of the overtime hours she worked in the week (the hours

17  from 40 to 50.5 hours) were payable at the swing-shift rate rather than the night-shift rate.

18          However, nothing in California law requires that an employer pay a shift differential at

19  any particular rate; this is a matter of voluntary company policy or agreement as negotiated in a

20  CBA.  Eden was within its rights to pay the swing-shift rate for the shift that began at 8:30 p.m.,

21  rather than the night-shift rate.  This is how the CBA reads and how the parties to the CBA have

22  interpreted it – *i.e.*, the shift differential rate is based on when the shift *began*, not which hours

23  were worked thereafter.[7]  (*See* Green Decl. ¶ 6.)

24  _____

25  [6]  40 hours x $25.10 = $1,004; 10.5 hours x $24.85 = $260.93; $1,004 + $260.93 = $1,264.93;
    $1.264.93 divided by 50.5 hours = $25.048 (the weighted-average regular rate of pay); $25.05
26  divided in half = $12.525 (rounded up to $12.53).

27  [7]  This interpretation generally works to the benefit of Loud and her co-workers, because
    whenever, as often happens, their shift starts at 11 p.m. and they work any overtime beyond 7
    a.m., their straight-time pay stays at the higher hourly night-shift rate ($25.10 in the above
28  example) rather than reverting back to the lower day-shift rate.

Loud does not claim – and, presumably, will not contend in opposition to this motion –

that Eden's method of calculating her pay violated the CBA.  Indeed, any such claim for breach

of the CBA would constitute a section 301 claim under the Labor-Management Relations Act, 29

U.S.C. § 185, and would completely preempt and supersede her state-law overtime claim,

requiring its summary dismissal.  *See, e.g.*, *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 220

(1985) (when resolution of a state-law claim is substantially dependent upon analysis of the terms

of an agreement made between the parties in a labor contract, that claim must either be treated as

a section 301 claim or dismissed as preempted by federal labor-contract law); *Paige v. Henry J.

Kaiser Co.*, 826 F.2d 857, 861 (9th Cir. 1987) (Section 301 displaces entirely any state-law cause

of action for violation of a CBA, any claims founded directly on rights created by a CBA, and any

claims that are substantially dependent on analysis of a CBA.).

Putting aside the week ending May 5, 2012, and turning now to all the *other* weeks in

which Loud has been employed, it is significant that Loud cannot point to *any* instance in which

Eden has *ever* miscalculated her overtime pay.  Repeatedly during her deposition, Loud admitted

that she does not know whether there was anything incorrect about the underlying shift

differential rates she was paid or the overtime rates on which her pay was based.

> Q.   [A]re there any other paychecks you can point to in which you believe
>       Eden Medical Center miscalculated the overtime rate and – and caused you
>       to lose money?…
>
> A.   It should be in the documents.
>
> Q.   It should be in the (sic) what documentation?
>
> A.   The documentation I was provided.  I think everything is listed there.
>
> Q.   … But I haven't seen anything in anybody's documents so far that
>       indicates to me that Eden underpaid your overtime.  I'm asking you –
>       because this is my one opportunity to ask you why you brought this
>       lawsuit, I'm asking you, do you have any other facts that you can tell me
>       today indicating that on any of these paychecks that you've received during
>       your employment, Eden undercalculated your overtime rate? …
>
> A.   Basically, whatever has been provided to you is – that's what it is.
>
> Q.   Okay.  Whatever has been provided to me, that's what it is?
>
> A.   Yes....

Q.    Well, I'm looking for any one – any one time that they've messed up.  I'm just looking for any instance you can show me where they undercalculated your overtime....

A.    Everything is there.  I mean, if you look at the documentation, you should be able to see what I provided.

Q.    I saw what you provided, and I can't find anything that was undercalculated.  I'm just wondering if you can point me to something that was undercalculated.

A.    I mean – I mean, I don't see how you – *I don't know.  I don't know.*

(Loud Dep. 122:22-25; 123:10-124:1-11; 124:24-125:11) (emphasis added).

Moreover, before filing this suit, Loud never bothered to ask anyone at Eden to clear up any alleged confusion she may have had about the calculation of her pay.

Q.    [D]id you ever talk to anyone in Eden's payroll department and ask them, "Why did you calculate my overtime rate the way that you did?"

A.    No.

Q.    Why not?

A.    I never really paid attention.  I didn't – I didn't look at my check stubs that much at – at those times.

Q.    So, instead of asking the payroll department, "have you calculated my overtime correctly?" you just decided just to file a federal lawsuit and allege that they calculated incorrectly?…

A.    You know, I'm not the type – the type to bring drama to the workplace.

(Loud Dep. 109:14-110:5; *see also* Hawley Decl. ¶ 4 (Loud never reported any pay issues to her supervisor.).)

Of course, it is not the burden of a defendant-employer to pour through its payroll and timekeeping records and try to dig out any alleged underpayments that may support a plaintiff's case.  It is not enough for Loud to say to Defendant:  "The miscalculations are in the documents somewhere – *you* go find them."

Loud is unable to show that her overtime has been paid incorrectly.  For this additional reason – aside from the existence of the CBA exemption in Labor Code section 514 – her California overtime claim fails as a matter of law and should be dismissed.

C.    **Loud's Claim For Overtime Compensation Under Federal Law Likewise Fails Because, As a Matter of Law, Eden Correctly Calculated Her Regular Rate Of Pay.**

Loud's federal overtime claim under the FLSA fares no better than her California claim. The FLSA requires the payment of overtime at time-and-one-half the regular rate of pay for hours worked beyond 40 in a workweek.  29 U.S.C. § 207.  In calculating the regular rate, an employer must include any shift differential pay.  29 C.F.R. § 778.207.

As already demonstrated, Eden has properly included shift differential pay in the regular rate and has properly paid overtime to Loud for all hours she worked beyond 40 in a week.  Loud can point to no workweek in which Eden failed to pay her the correct amount of overtime pay due her.  Her FLSA claim appears to be based on the same mistaken understanding that led to her California claim – namely, that on one particular paycheck, Eden failed to pay time-and-one-half the highest base hourly rate she worked in the week, rather than a blending of the hourly straight-time pay she worked at two or more rates.  Eden calculated her overtime pay correctly, in accordance with the union contract and the FLSA.  Her FLSA claim, therefore, must be dismissed.

D.    **Loud's Claim For Reporting Time Pay Fails As A Matter of Law.**

The Industrial Welfare Commission Wage Order applicable to the healthcare industry (Wage Order 5-2001) provides, in pertinent part:

> Each workday an employee is required to report for work and does report, but is not put to work or is furnished less than half said employee's usual or scheduled day's work, the employee shall be paid for half the usual or scheduled day's work, but in no event for less than two (2) hours nor more than four (4) hours, at the employee's regular rate of pay, which shall not be less than the minimum wage.

Wage Order 5-2001, § 5(A), available at http://www.dir.ca.gov/IWC/IWCArticle5.pdf.

Reporting time is not owed when the cause for the interruption of work is not within the employer's control.  *Id.* § 5(C)(3).

Loud's claim for reporting time pay is based on two theories.  First, she claims that Eden failed to pay reporting time pay on days when she came into work solely to attend a meeting of less than four hours' duration.  (FAC ¶ 20; Loud Dep. 213:4-214:14.)  Second, she alleges that

1   Eden failed to pay reporting time pay on days when she was scheduled to work eight hours but

2   was sent home before having worked at least four hours.  (FAC ¶ 21; Loud Dep. 208:22-209:5.)

3         Neither claim is well-founded.

4         **1.**      <u>**As a matter of law, Loud is not owed reporting time pay for the days**</u>
    <u>**she attended meetings.**</u>

5         It is true that Eden did not pay reporting time pay on days when Loud came into work

6   solely to attend a scheduled meeting.  If, for example, she attended a meeting that was scheduled

7   to last, and did last, 1.5 hours, she received 1.5 hours' pay.  (*See* Green Decl. ¶ 8; Loud Dep.

8   218:6-20.)  This, however, is all that California law requires to be paid; she has no right to

9   reporting time pay.  That is because on days when she came into work only for a scheduled

10  meeting, she was furnished and paid at least half her "scheduled" day's work for that day, and

11  thus no reporting time pay was due to her under the Wage Order.

12        This claim is controlled by the California Court of Appeal's decision in *Aleman v.*

13  *Airtouch Cellular*, 209 Cal. App. 4th 556 (2012), decided following remand from the California

14  Supreme Court.  There, the employer periodically required employees of a retail store to attend

15  store meetings, each generally lasting one hour or an hour-and-a-half.  The meetings, which were

16  scheduled in advance, sometimes occurred on an employee's "off" day, in which case the

17  employee reported to work solely to attend the meeting.  On these days, the employer paid the

18  employees for the time they spent attending the meetings, but did not pay them any additional

19  reporting time pay.  *Id.* at 564.

20        One of the plaintiffs in *Aleman* alleged in a putative class action that the employer

21  improperly failed to pay reporting time pay on the days when employees reported to work solely

22  to attend the store meetings.  He argued that on each of these days, the employer owed at least

23  two hours' wages, the minimum amount of reporting time pay due under the Wage Order.  *Id.* at

24  569.  The court, however, rejected the plaintiff's argument.  The court noted that the meetings

25  always lasted at least half as long as they were scheduled.  *Id.*  In other words, if a meeting was

26  scheduled to last 1.5 hours, the employer never concluded the meeting and sent the employees

27  home fewer than 45 minutes after commencing the meeting.  Therefore, according to the court,

28

1   the reporting time pay rules never were triggered, because the employees always worked at least

2   "half the usual or scheduled day's work" – in this case, half of the "scheduled" day's work for

3   that day.  *Id.*[8]  Because the meetings were pre-scheduled, the court rejected the plaintiffs'

4   contention that the employee's "usual" day's work was relevant to the analysis.  *Id.* at 571.

5              The holding in *Aleman* necessitates judgment in Eden's favor on Loud's claim herein.

6   Loud concedes that the meetings she attended on her off-days were scheduled in advance, that she

7   was compensated for the amount of time spent in the meetings, and that the meetings lasted at

8   least one-half as long as scheduled.  (*See* Loud Dep. 215:2-5, 13-16; 217:17-218:5.)

9        Q.     Okay.  Now, of all the meetings that you've attended at various times
              during your employment on your off days where you came in for a meeting
10             … .  You were always paid for the time that you spent attending the
              meeting, right, on those occasions – ….
11
         A.     As far as I know, yeah, but there – yes.…
12
         Q.     And all of those meetings were scheduled meetings, right, scheduled in
13             advance?

14       A.     Yes.

15  (Loud Dep. 218:6-23.)

16       Q.     Can—can you—do—do you know of any meetings that you—let's say
              there was a training session that was—you were told in advance, "This is
17             going to be a three-hour training session to go over the new electronic
              health record system."
18
         A.     Uh-huh.
19
         Q.     And then you came in, and the meeting only lasted one hour.
20
         A.     Uh-huh.
21
         Q.     It was cut short – you know, it was cut short.  You know, it was less than
22             half as long as it was supposed to be.  Did that – that never happened, did
              it?
23
_____

24  [8] The court framed the issue as follows:  "If an employee's only scheduled work for the day is a
25  mandatory meeting of one and a half hours, and the employee works a total of one hour because
    the meeting ends a half hour early, is the employer required to pay reporting time pay pursuant to
26  subdivision 5(A) of Wage Order 4 in addition to the one hour of wages?"  *Id.* at 569.  The court
    answered its own question this way:  "The answer to this question is no, because the employee
27  was furnished work for more than half the scheduled time.  The employee would be entitled to
    receive one hour of wages for the actual time worked, but would not be entitled to receive
28  additional compensation as reporting time pay."  *Id.*

_____

Case No. 12-CV-02936 EDL

DEFENDANT'S NOTICE OF MOTION AND
MOTION FOR PARTIAL SUMMARY
JUDGMENT

LEGAL_US_W # 75540845.2

1        A.      Not to my recollection.  I don't know.

2   (Loud Dep. 219:4-17.)

3        Thus, based on *Aleman*, Loud is not owed any reporting time pay for attending these pre-

4   scheduled meetings, because the meetings ran for at least half of their scheduled duration.[9]

5   Therefore, Loud's claim for reporting time pay based on meeting attendance should be dismissed.

6            **2.      Likewise, Loud cannot show an entitlement to reporting time pay for days on which she was scheduled to work eight hours.**

7        Eden's policy and practice is to pay four hours of reporting time pay if it furnishes an

8   employee an eight-hour shift with less than four hours of work, in accordance with the Wage

9   Order.  (Green Decl. ¶ 8.)  Eden records such reporting time pay under a special pay code (#134)

10  if the additional pay is not otherwise recorded as regular wages.  (*Id.*)  Moreover, Eden already is

11  contractually obligated to pay four hours' pay when an employee reports for work but no work is

12  available.  (*Id.*; CBA, § 14.)

13       Loud's supervisor, Karen Hawley, is unaware of any instance in which Loud ever reported

14  for work on an eight-hour shift and was sent home by the hospital early without receiving at least

15  four hours' pay.  (Hawley Decl. ¶ 3.)  Loud has never brought any such instance to Hawley's

16  attention.  (*Id.*; Loud Dep. 178:19-22.)

17       Loud has no contrary evidence.  Instead, she speculates that there may have been days

18  when someone sent her home early under circumstances that purportedly would trigger reporting

19  time pay *and* that she did not receive at least four hours' pay on those occasions.  (Loud Dep.

20  221:1-222:10; 223:6-224:4; 225:18-226:7; 230:5-11; 230:21-231:21.)  Speculation, however,

21  does not create a triable issue.  *See Nelson*, 83 F.3d at 1081-82.

22  _____

23  [9] An employer's reporting time obligation might be different if the employer suddenly calls an
24  employee at home, without any advance warning, and directs the employee to come into work for
    an unscheduled meeting of no specified duration.  *Cf. Price v. Starbucks Corp.*, 192 Cal. App. 4th
25  1136 (2011) (upholding employer's action in paying two hours of reporting time pay, but no more
    than that, where the plaintiff was suddenly called into work to attend a short meeting at which
26  plaintiff's employment was terminated).  The *Aleman* court found *Price* to be distinguishable,
    because *Price* did not involve a "scheduled" meeting.  *Aleman*, 209 Cal. App. 4th at 572.
27  Likewise, *Price* does not support Loud's position here, because Loud has never been called into
    work from home, without advance notice, to attend an unscheduled meeting of unspecified
28  duration.

1   Furthermore, Loud admits that, at times, Eden gives employees the choice of leaving early

2   or staying for the remainder of their shift.  (Loud Dep. 226:8-227:9.)  On the two days in question

3   raised in her amended complaint (*i.e.*, September 14, 2011 and March 25, 2012, *see* FAC ¶ 21),

4   Loud does not recall whether Eden sent her home early *or* whether she volunteered to leave early.

5   (Loud Dep. 226:25-227:9; 228:5-230:16.)

6   Q.   Well, Ms. –Ms. Loud, do you recall specifically what happened on that
         morning?

7

8   A.   I do not recall specifically what happened on September 11th, 2011, and
         it's 2013 now.

9   Q.   Okay.  You –you–you went home early, you–apparently; right?

10  A.   Yes.

11  Q.   Okay.  And you just don't remember what the circumstances were, do you?

12  A.   No.

13  (Loud Dep. 223:20-224:4.)  For example, when asked whether the September incident could have

14  been one of those days when the charge nurse said, "Hey, do you want to go home?  You know,

15  fine.  If you want to stay, that's fine, too," Loud responded:  "I mean, I can't go back that far, but

16  maybe."  (Loud Dep. 226:25-227:5.)

17          Loud also cannot identify *any* other days when she purportedly is due reporting time pay

18  for working less than four hours on a scheduled day without receiving at least four hours' pay.

19  (Loud Dep. 231:8-12.)  Nor can she identify a single person who sent her home before she had

20  worked at least four hours.[10]  (Loud Dep. 232:23-233:1.)

21          This evidence is far too thin to create a genuine dispute of material fact.  (*See* Loud Dep.

22  239:4-7.)  In the absence of *any* evidence – other than Loud's speculation – establishing that there

23  was at least one day in Loud's nearly two years of employment in which Eden sent her home

24

25

26  _____

    [10]  Indeed, Loud recalls the first name of only one Eden employee – a charge nurse named
27  Sigmund – who purportedly sent her home early, but that was *after* she had already worked four
    hours and was paid for four hours.  (Loud Dep. 231:24-232:22.)  Accordingly, she is due no
28  reporting time pay for that incident.

---

1   early, without giving her the option to remain and without paying her at least four hours' pay, her

2   claim for reporting time pay must be dismissed.

3         **E.**    **Loud's Claim For Allegedly Deficient Wage Statements Fails As A Matter of Law.**

4             **1.**    **Loud's wage statements contain the required items in section 226(a).**

5         Eden is entitled to summary judgment on Loud's wage statement (pay stub) claim,

6   because Eden has provided her with complete and accurate wage statements that comply in all

7   respects with California's pay stub statute, Labor Code section 226(a).  Section 226(a) specifies

8   that an employee's wage statement must show:  (1) gross wages earned; (2) total hours worked by

9   the employee; (3) the number of piece-rate units earned and any applicable piece rate if the

10   employee is paid on a piece-rate basis (if applicable); (4) all deductions taken (which can be

11   aggregated); (5) net wages earned; (6) the inclusive dates of the pay period; (7) the name of the

12   employee and the last four digits of the employee's social security number or an employee

13   identification number; (8) the name and address of the legal entity that is the employer; and (9) all

14   applicable hourly rates in effect during the pay period and the corresponding number of hours

15   worked at each hourly rate by the employee.  Cal. Lab. Code § 226(a).

16         Loud does not contend that her wage statements are missing any of the required items in

17   section 226(a).[11]  (Loud Dep. 233:4-235:1; Geidt Decl. ¶ 8, Exh. G.)  To the contrary, at her

18   deposition she verified, point by point, that her wage statements have contained each of the

19   required items of information set forth in the statute.  (*Id.*)  Loud attached all of her wage

20   statements from September 2011 through May 2012 as Exhibit 1 to her FAC.  It is plain to see

21   from a perusal of the pay stubs that each contains all eight of the required items of information.

22   (*See also* Geidt Decl. ¶ 8, Exh. G.)

23         At her deposition, Loud was reluctant to admit that all of the information contained in her

24   wage statements was fully accurate, but she was unable to point to a single piece of information

25   in any of her wage statements that was inaccurate and incorrect.  (Loud Dep. 235:2-239:3.)

26   

27   

28   [11]  Loud does not earn piece-rate wages; accordingly, her wage statements do not contain any piece-rate information.  (Green Decl. ¶ 4.)

---

For these reasons, there is no genuine dispute as to a material fact, and her wage statement claim should be dismissed as a matter of law.

## 2. Moreover, Loud has not suffered a cognizable injury from Eden's pay stubs.

Because Loud's wage statements fully comply with the statute, there is no need for the Court to reach the issue of whether she has been injured by Eden's pay stubs.  However, even if for some reason Loud could prove a technical violation of Labor Code section 226(a) (which she cannot), her claim for penalties fails because she has not suffered any injury.

To prevail on a claim for an award of penalties under section 226, a plaintiff must establish that she "suffered injury" as a result of the employer's "knowing and intentional" failure to furnish accurate and complete wage statements.  *See* Cal. Lab. Code § 226(e).  As numerous courts have observed, an employer's failure to furnish the information required by section 226(a) does not, by itself, result in a remedy under section 226(e) without satisfying the additional requirements of the statute.  *See, e.g.*, *Price*, 192 Cal. App. 4th at 1142-43 ("By employing the term 'suffering injury,' the statute requires that an employee may not recover for violations of section 226, subdivision (a), unless he or she demonstrates *an injury* arising from the missing information.  Thus, the deprivation of that information, standing alone, is not a cognizable injury.") (emphasis in original) (citations omitted); *Elliot v. Spherion Pac. Work, LLC*, 572 F. Supp. 2d 1169, 1181 (C.D. Cal. 2008) (A failure to comply with section 226(a) does not necessarily equate to "suffering injury"; injury must separately be proven.).

Loud's only claim of "injury" is a generalized assertion that she has been "confused" by the pay stubs – a claim that is all too easy for any plaintiff to make in a case of this kind.[12]  (Loud Dep. 88:11-17; 103:14-25; 235:2-13; 236:19-25.)  A generalized claim of confusion, however, does not constitute proof of an actual injury.

---

[12]  Loud also contends that her wage statements are inaccurate because Eden miscalculates her overtime compensation.  (*See* Loud Dep. 88:11-20.)  As explained in sections V.B. and V.C., *supra*, however, Eden properly calculates her overtime rates.

In *Price*, the California Court of Appeal affirmed the trial court's dismissal of the plaintiff's cause of action for wage-statement penalties at the pleadings stage because the complaint did not articulate a cognizable injury that would permit recovery.  The plaintiff alleged that his wage statements did not comply with section 226(a) because they did not list the total hours worked, net wages earned, and all applicable hourly rates, including the overtime rate of pay.  192 Cal. App. 4th at 1142 n.4.  Based on these defects, plaintiff claimed that he and the putative class suffered from a common injury:  "This lack of information 'caused confusion and possible underpayment of wages due,' required the putative class to file this lawsuit, and forced the putative class to attempt to reconstruct their time and pay records." *Id.* at 1142.  The court concluded that this allegation failed as a matter of law, noting that the "mathematical injury" that the plaintiff suffered and his speculation about the "possible underpayment of wages" was not sufficient to show a cognizable injury justifying the remedy provided in section 226(e).  *See id.* at 1143.

Other courts are in accord.  *See, e.g., Nguyen v. Baxter Healthcare Corp.*, 2011 U.S. Dist. LEXIS 141135 (C.D. Cal. Nov. 28, 2011) (plaintiff's alleged confusion and the need to perform mathematical calculations caused by the absence of shift differential hourly rates on the wage statements was not enough to establish injury); *Lopez v. Wendy's International, Inc.*, 2011 U.S. Dist. LEXIS 151513, at *29 (C.D. Cal. Sept. 19, 2011) ("[C]ourts have concluded that the mere absence of information and resulting confusion is not a sufficiently concrete harm to constitute an injury[.]" ); *York v. Starbucks Corp.*, 2011 U.S. Dist. LEXIS 118310, at *10-11 (C.D. Cal. Aug. 5, 2011) (granting summary judgment for the employer despite plaintiff's claim that "she was confused by the wage statements, had to add up her overtime and regular hours, and felt that she could not accurately determine her pay").[13]

---

[13] Effective January 1, 2013, section 226(e) was amended to clarify that "suffering injury" occurs "if the employer fails to provide accurate and complete information as required by any one or more of items (1) to (9), inclusive of subdivision [226](a)" *and* the employee can prove at least one other factor demonstrating injury. *See* Cal. Ch. 844 at 90, Assemb. Bill 1744, 2011-2012 Reg. Sess. (Sept. 30, 2012), available at http://www.leginfo.ca.gov/pub/11-12/bill/asm/ab_1701-1750/ab_1744_bill_20120930_chaptered.pdf; Cal. Lab. Code § 226(e)(2)(B).  Even assuming that this definition retroactively applies to Loud's claim, she cannot show that she suffered injury,

1    Moreover, Loud's claim of confusion is disingenuous.  Eden's wage statements are simple

2    and straightforward.  They contain all the required information.  On their face, nothing about

3    them is "confusing."  Any alleged confusion on Loud's part is of her own making.  Loud admits

4    that she does not know her own pay rates or applicable shift differential rates under the CBA

5    (Loud Dep. 38:16-39:6; 103:3-8); she "has never really paid attention" to her check stubs and

6    "didn't look at [her] check stubs that much" (Loud Dep. 109:19-21); and she never bothered to

7    ask anyone at Eden to clarify any questions or alleged confusion about the check stubs before

8    filing this lawsuit.  (Loud Dep. 109:14-17; 109:22-110:5; Hawley Decl. ¶ 4.)

9    Consequently, Eden is entitled to judgment as a matter of law on Loud's pay stub claim,

10    in its entirety.  Alternatively, Eden is entitled to partial summary judgment on Loud's claim for

11    pay stub penalties under Labor Code section 226(e).

12            **F.**      **<u>Loud's PAGA Claim Fails Because Loud Never Provided Proper Notice Of</u>**
     **<u>Her Claim To The Labor And Workforce  Development Agency.</u>**

13    Loud's eighth cause of action under PAGA fails as a matter of law because her notice to

14    the LWDA – a necessary prerequisite to raise a PAGA claim – was severely deficient.[14]

15    It is undisputed that a plaintiff cannot pursue PAGA penalties without first exhausting her

16    administrative remedies.  *Caliber Bodyworks, Inc. v. Superior Court*, 134 Cal. App. 4th 365, 384

17    (2005) ("[C]ompliance with the prefiling notice and exhaustion requirements of [PAGA] is

18    mandatory."); *see also Helm v. Alderwoods Group, Inc.*, 696 F. Supp. 2d 1057, 1077 (N.D. Cal.

19    2009) (same).  The exhaustion process commences with a certified letter to the LWDA,

20    identifying the "***specific*** provisions of this [Labor] code alleged to have been violated, including

21    the ***facts and theories*** to support the alleged violation."  Cal. Lab. Code § 2699.3(a)(1) (emphasis

22    added).  This notification requirement enables the LWDA to retain primacy over pursuing such

23     

24    because the wage statements are not deficient in any respect, nor can she otherwise show any
     other factor demonstrating injury.

25    [14] Eden stipulated with Loud that she could file an amended complaint to add a cause of action

26    under PAGA, but did so with the following reservation:  "By stipulating to this amendment,
     Defendant in no way agrees to, and instead expressly reserves its right to challenge by any and all

27    available procedural means, the validity or sufficiency of each and every allegation contained in
     the [First Amended Complaint]."  (Stipulation re: Filing of First Amended Complaint at 3:1-3

28    (Nov. 8, 2012), ECF No. 19.)

1    law enforcement actions by informing the agency of the alleged violations so that it can determine

2    whether to pursue an investigation.  *See Arias v. Superior Court*, 46 Cal. 4th 969, 980 (2009)

3    (The LWDA "retain[s] primacy over private enforcement efforts."); *see also* Cal. Lab. Code §

4    2699.3(a)(2) (The LWDA has a prescribed period of time to determine whether to investigate the

5    alleged violation articulated in the employee's notice.).

6         Courts routinely dismiss PAGA claims for failure to exhaust administrative remedies

7    where, as here, the LWDA notice falls short of the requirements of section 2699.3(a)(1).  *See,*

8    *e.g.*, *Swanson v. USProtect Corp.*, 2007 WL 1394485, at *6 (N.D. Cal. May 10, 2007) (granting

9    partial summary judgment to employer where plaintiffs' letter to the LWDA failed to identify

10   alleged violations raised in complaint).  In *Archila v. KFC U.S. Props., Inc.*, 420 Fed. Appx. 667

11   (9th Cir. 2011), the Ninth Circuit affirmed the dismissal of a PAGA claim, even though the

12   LWDA notice listed the Labor Code provisions that allegedly were violated, because it contained

13   no "facts and theories to support the alleged violation."  *Id.* at 669 (citation omitted) (internal

14   quotation marks omitted); *see also Soto v. Castlerock Farming & Trans. Inc.*, 2012 WL 1292519,

15   at *7 (E.D. Cal. Apr. 16, 2012) (dismissing PAGA claim; the LWDA notices could not

16   "constitute adequate notice for purposes of PAGA" because they contained no "factual

17   allegations whatsoever[.]").

18        Likewise, in *Silva v. U.S. Bancorp*, 2011 WL 7096576 (C.D. Cal. Oct. 6, 2011), the court

19   dismissed with prejudice a PAGA claim because the plaintiff's two certified letters to the LWDA

20   failed to allege a violation under a specific Labor Code provision, nor contained any "facts

21   supporting such an allegation."  *Id.* at *3; *see also Alcantar v. Hobart Serv.*, 2013 WL 228501, at

22   *3 (C.D. Cal. Jan. 22, 2013) (granting summary judgment to the defendants because plaintiff's

23   letter to the LWDA only vaguely identified violations and alleged no specific facts for the

24   violations; "[S]imply claiming violations of Labor Code provisions without specifying the factual

25   context underlying those violations is insufficient for satisfying the statutory prerequisites of

26   PAGA.").

27        Here, Loud's purported notice to the LWDA, contained in a letter dated June 6, 2012, was

28   wholly deficient under the controlling standard set forth in section 2699.3(a)(1).  Her notice failed

1  to specify *a single* Labor Code provision, let alone identify *any* factual support for any alleged

2  Labor Code violations.  Rather, her notice consisted, in substance, only of the following:

> The law office of Harris & Ruble has been retained by Erika Loud, an employee of
> Eden Medical Center in the State of California, concerning *various violations of*
> *California labor laws*.  The facts and circumstances concerning the alleged
> violations are outlined in Ms. Loud's Complaint, which is being filed with the U.S.
> District Court, Northern District of California.  Please advise whether you will
> proceed with an investigation of this matter or whether Ms. Loud may seek a civil-
> penalty recovery under the Labor Code Private Attorney's [sic] General Act.

7  (Geidt Decl. ¶ 4, Exh. C (emphasis added); Loud Dep. 72:14-15, 18-25; 73:10-15.)[15]

8  　　　This notice did not give even a smidgen of detail to the LWDA other than the non-

9  consequential fact that Eden employs Loud in California and that Loud is alleging "various" labor

10  law violations.  Based on this letter, the LWDA could not have identified the purported

11  violations, let alone conducted a meaningful evaluation to assess whether it should investigate the

12  alleged violations, as PAGA contemplates.  In this regard, the content of Loud's notice (or lack

13  thereof) is even more deficient than those that failed in *Swanson*, *Archila*, *Soto*, *Silva*, and

14  *Alcantar*.  Accordingly, the Court should grant partial summary judgment on Loud's PAGA

15  claims.

16  　　　Nor should Loud be permitted to file an amended notice to the LWDA at this late stage.

17  Under PAGA, an individual seeking civil penalties is required *first* to exhaust his or her

18  administrative remedies *prior to filing suit*.  *See* Cal. Lab. Code § 2699.3(a) ("A civil action by an

19  aggrieved employee pursuant to subdivision (a) or (f) of Section 2699 … *shall commence only*

20  *after the following requirements have been met* ….") (emphasis added).  As one court recently

21  concluded, "[A]llowing an amended notice to be submitted after the civil action has already been

22  filed defeats the very purpose of the exhaustion requirement, which is to give the LWDA the

23  opportunity to make an informed decision about whether to pursue the matter itself."  Civil

24  Minutes – General, Order re: Defs.' Mot. for J. on the Pleadings at 6, *Ovieda v. Sodexo*

25  *Operations, LLC*, No. 12-cv-01750 (C.D. Cal. July 3, 2013), ECF No. 142 (dismissing PAGA

26

27  [15] This letter is the only notice Loud has provided to the LWDA, and the LWDA's responsive
letter dated August 28, 2012, referring back to Loud's June 6 letter, is the only correspondence

28  issued by the LWDA regarding Loud's claims.  (Geidt Decl. ¶¶ 4-5, Exh. D.)

LEGAL  US  W # 75540845.2

-23-

DEFENDANT'S NOTICE OF MOTION AND
MOTION FOR PARTIAL SUMMARY
JUDGMENT

1  claim where plaintiff's letter to the LWDA failed to set forth the requisite facts and theories to

2  support the alleged Labor Code violations).

3       Therefore, summary judgment should be granted in Eden's favor on Loud's PAGA claim.

4  **VI.**     <u>**CONCLUSION**</u>

5       For the reasons stated, there is no genuine dispute as to any material fact on Loud's third,

6  fourth, fifth, sixth, and eighth causes of action.  Eden respectfully requests that the Court grant

7  partial summary judgment in Eden's favor on these five claims.

8  
9  DATED:  July 16, 2013         PAUL HASTINGS LLP

10  
11           By:  /s/             Thomas E. Geidt

12                 Thomas E. Geidt
              Attorneys for Defendant

13                Eden Medical Center

14  
15  
16  
17  
18  
19  
20  
21  
22  
23  
24  
25  
26  
27  
28