IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERIKA L LOUD, | No. C -12-02936 EDL |
| Plaintiff, | **ORDER GRANTING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| v. | |
| EDEN MEDICAL CENTER, | |
| Defendant. | |

Plaintiff Erika Loud, a hospital nursing assistant, brought this putative class action wage and hour case against her employer Eden Medical Center.[1] On July 16, 2013, Defendant filed this Motion for Partial Summary Judgment, which has been fully briefed. Defendant seeks summary judgment as to the following claims: (1) Plaintiff's third claim alleging failure to pay proper overtime compensation under California law; (2) Plaintiff's fourth claim alleging failure to pay proper overtime compensation under the Fair Labor Standards Act; (3) Plaintiff's fifth claim alleging failure to pay reporting time pay under California law; and (4) Plaintiff's sixth claim alleging failure to provide proper pay stubs under California law. In the reply, Defendant withdrew its motion as to Plaintiff's eighth claim alleging civil penalties under the California Private Attorneys General Act ("PAGA").

Because this matter was appropriate for decision without oral argument, the Court vacated the September 3, 2013 hearing. For the reasons stated in this Order, Defendant's Motion for Partial Summary Judgment is granted.

---

[1] Due to a change in affiliation of Eden Medical Center, Plaintiff's employer is Sutter Medical Center Castro Valley d.b.a. Eden Medical Center. Green Decl. ¶ 2. However, for purposes of this motion. Defendant does not dispute that Eden Medical Center is Plaintiff's employer. Mot. at 4, n.2.

**Facts**

Plaintiff was hired as a per diem nursing assistant in the float pool at Eden Medical Center's Castro Valley hospital in August 2011. Hawley Decl. ¶ 2; Green Decl. ¶ 4. A per diem employee is one who is essentially on call and works less than a full-time schedule on an as-needed basis. Geidt Decl. Ex. A (Loud Depo.) at 22, 25. Plaintiff was classified as a non-exempt employee entitled to overtime pay. Geidt Decl. Ex. A at 31-32. Plaintiff was generally scheduled to work eight-hour shifts, either on the evening shift or the night shift. Id. ¶ 3. At the time of her hire, Plaintiff's base hourly rate was $23.19. Green Decl. ¶ 4. As of May 2012, Plaintiff's base hourly rate was $23.85. Green Decl. ¶ 7.

Since Plaintiff's hire date, the terms and conditions of her employment have been governed by a collective bargaining agreement ("CBA") between Defendant and the United Healthcare Workers-SEIU. Green Decl. ¶ 5; Geidt Decl. Ex. B. Among other things, the CBA provides that bargaining unit employees like Plaintiff are entitled to overtime pay of time-and-one-half if they perform work that exceeds eight hours per day or forty hours in a week. Green Decl. ¶ 5; Geidt Decl. Ex. B at 24-25. The CBA requires payment of double-time wages for any work in excess of twelve hours per day or for any work performed on the seventh consecutive day of work in a workweek. Geidt Decl. Ex. B at 24-25.

The CBA also provides for shift differential pay for nursing assistants equivalent to $1.00 for each hour worked on the evening shift and $1.25 for each hour worked on the night shift. Green Decl. ¶ 6; Geidt Decl. Ex. B at 22. The CBA defines the evening shift as a shift that begins on or after 2:00 p.m. but before 11:00 p.m., and it defines the night shift as a shift that begins on or after 11:00 p.m. but before 6:00 a.m. Green Decl. ¶ 6; Geidt Decl. Ex. B at 22. It is the hospital's practice to include shift differential pay in the calculation of overtime. Green Decl. ¶ 6. As of May 2012, Plaintiff's evening shift rate was $24.85, and her night shift rate was $25.10. Green Decl. ¶ 7. The payroll workweek for Plaintiff is defined as running from Sunday at 12:01 a.m. through Saturday night at midnight, and each workday begins at midnight. Green Decl. ¶ 9. If an employee starts a shift before midnight and if the shift extends beyond midnight, all hours worked on the continuous shift are counted as though they were worked on the calendar day on which the shift

1 began. Green Decl. ¶ 9.

2 Defendant has a policy to pay employees who are covered by the CBA a minimum of four
3 hours of reporting time pay if they report to work to perform a scheduled eight-hour shift, but are
4 furnished less than four hours of work. Green Decl. ¶ 8. Defendant does not pay reporting time pay
5 if employees elect to voluntarily shorten their scheduled shift. Green Decl. ¶ 8. Plaintiff's
6 supervisor, Karen Hawley, stated that Plaintiff never reported to her that there were any days in
7 which Plaintiff was sent home early by someone in hospital management before having worked at
8 least four hours without receiving at least four hours' pay for that day. Hawley Decl. ¶ 3.
9 Defendant also does not pay reporting time to employees who come into work solely to attend a pre-
10 scheduled meeting on a day off, and instead pays them for all the time that they spend in attendance
11 at the meeting. Green Decl. ¶ 8. Hawley stated that Plaintiff never complained to Hawley that she
12 thought she was underpaid, nor did Plaintiff raise any questions or concerns with Hawley about her
13 pay. Hawley Decl. ¶ 3.

**Legal Standard**

15 Summary judgment shall be granted if "the pleadings, discovery and disclosure materials on
16 file, and any affidavits show that there is no genuine issue as to any material fact and that the
17 movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(c). Material facts are those
18 which may affect the outcome of the case. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248
19 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury
20 to return a verdict for the nonmoving party. Id. The court must view the facts in the light most
21 favorable to the non-moving party and give it the benefit of all reasonable inferences to be drawn
22 from those facts. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The
23 court must not weigh the evidence or determine the truth of the matter, but only determine whether
24 there is a genuine issue for trial. Balint v. Carson City, 180 F.3d 1047, 1054 (9th Cir. 1999).

25 A party seeking summary judgment bears the initial burden of informing the court of the
26 basis for its motion, and of identifying those portions of the pleadings and discovery responses that
27 demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317,
28 323 (1986). Where the moving party will have the burden of proof at trial, it must affirmatively

1 demonstrate that no reasonable trier of fact could find other than for the moving party. On an issue 2 where the nonmoving party will bear the burden of proof at trial, the moving party can prevail 3 merely by pointing out to the district court that there is an absence of evidence to support the 4 nonmoving party's case. Id. If the moving party meets its initial burden, the opposing party "may 5 not rely merely on allegations or denials in its own pleading;" rather, it must set forth "specific facts 6 showing a genuine issue for trial." See Fed. R. Civ. P. 56(e)(2); Anderson, 477 U.S. at 250. If the 7 nonmoving party fails to show that there is a genuine issue for trial, "the moving party is entitled to 8 judgment as a matter of law." Celotex, 477 U.S. at 323.

**Discussion**

**1.     Plaintiff's claim for overtime compensation under California law is barred by California Labor Code section 514.**

California's general overtime provisions are contained in California Labor Code sections 510 and 511. Section 510, which defines what constitutes overtime hours and sets the rate of pay applicable to overtime work, states in relevant part:

> Eight hours of labor constitutes a day's work. Any work in excess of eight hours in one workday and any work in excess of 40 hours in any one workweek and the first eight hours worked on the seventh day of work in any one workweek shall be compensated at the rate of no less than one and one-half times the regular rate of pay for an employee. Any work in excess of 12 hours in one day shall be compensated at the rate of no less than twice the regular rate of pay for an employee. In addition, any work in excess of eight hours on any seventh day of a workweek shall be compensated at the rate of no less than twice the regular rate of pay of an employee. Nothing in this section requires an employer to combine more than one rate of overtime compensation in order to calculate the amount to be paid to an employee for any hour of overtime work. The requirements of this section do not apply to the payment of overtime compensation to an employee working pursuant to any of the following:
>
> (1) An alternative workweek schedule adopted pursuant to Section 511.
>
> (2) An alternative workweek schedule adopted pursuant to a collective bargaining agreement pursuant to Section 514.
>
> (3) An alternative workweek schedule to which this chapter is inapplicable pursuant to Section 554.

Cal. Gov't Code § 510. In addition, section 511, relating to overtime for employees who have adopted an alternative workweek schedule, states in relevant part:

> An affected employee working longer than eight hours but not more than 12 hours in a day pursuant to an alternative workweek schedule adopted pursuant to this section

4

> shall be paid an overtime rate of compensation of no less than one and one-half times the regular rate of pay of the employee for any work in excess of the regularly scheduled hours established by the alternative workweek agreement and for any work in excess of 40 hours per week. An overtime rate of compensation of no less than double the regular rate of pay of the employee shall be paid for any work in excess of 12 hours per day and for any work in excess of eight hours on those days worked beyond the regularly scheduled workdays established by the alternative workweek agreement.

Cal. Labor Code § 511.

However, under Labor Code section 514, employees who are covered by CBAs that meet certain conditions are exempt from California's overtime provisions:

> Sections 510 and 511 do not apply to an employee covered by a valid collective bargaining agreement if the agreement expressly provides for the wages, hours of work, and working conditions of the employees, and if the agreement provides premium wage rates for all overtime hours worked and a regular hourly rate of pay for those employees of not less than 30 percent more than the state minimum wage.

Cal. Labor Code § 514; Cathcart v. Sara Lee Corp., 2011 WL 5981849, at *4-5 (N.D. Cal. Nov. 30, 2011) (rejecting the plaintiffs' argument that section 514 only applied to employees working alternative workweek schedules and holding that the plaintiff's California overtime suit was barred by section 514). Thus, if an employee is covered by a CBA that includes the provisions identified in section 514, the employee is exempt from the requirements set forth in sections 510 and 511.

Although Plaintiff argues that Defendant failed to establish that the CBA "expressly provides for the wages, hours of work, and working conditions of the employees, and . . . provides premium wage rates for all overtime hours worked" (see Cal. Labor Code § 514), Plaintiff has offered no evidence to raise a disputed issue of fact in light of Defendant's evidence that it does. See Green Decl. ¶ 5 (stating that the CBA provides that employees, including nursing assistants, are entitled to overtime pay if they perform work that exceeds eight hours in a day or 40 hours per week); Geidt Decl. Ex. B at §§ 11, 13-14 (CBA provisions for hours worked, minimum hours and wages). First, the CBA "expressly provides for the wages, hours of work, and working conditions" of nursing assistants. See Cal. Lab. Code § 514; Geidt Decl. Ex. B at 19-28. Second, the CBA provides premium wages for all overtime hours worked. Geidt Decl. Ex. B at 24-27. Also, the CBA provides for Plaintiff to receive a regular hourly rate for pay of not less than 30% more than the state minimum wage, which equates to $10.40. Id. Ex. B at Appx D-F. Plaintiff's base rate has not been

lower than $23.19. Id.; Green Decl. ¶ 4. Thus, there is no triable issue of fact that the requirements of section 514 have been satisfied.[2]

Plaintiff also contends that section 514 does not apply to her because she was not "covered by a valid collective bargaining agreement." See Cal. Labor Code § 514. Plaintiff argues that she was not a member of the union until January 2013, as evidenced by her wage statements which prior to January 2013 do not show union dues deducted. See Harris Decl. Ex. 9 (wage statements from late 2012 and early 2013 showing union dues only as of the February 8, 2013 paycheck). Defendant notes that Plaintiff's wage statements do not show when she became a union member because dues may be paid in ways other than a paycheck deduction, although Defendant offers no evidence about alternative payment methods by Plaintiff. Plaintiff also contends that Plaintiff and the putative class members do not join the union until they have completed a probationary period. Opp. at 4. The CBA, however, does not support Plaintiff's position. The CBA states that there is a probationary period for employees generally during which they can be discharged for any non-discriminatory reason, and during which they may not avail themselves of the grievance procedure. Geidt Decl. Ex. B at 2-3; Reply Green Decl. ¶ 2. But the CBA also states that new employees must join the union, or decline to join and pay a service fee, no later than the 31st day following commencement of their employment, which is shorter than the probationary period. Id. at 3. In fact, in September 2012, Plaintiff's supervisor sent her an email showing that Plaintiff was late in paying her union dues. Reply Hawley Decl. ¶¶ 2-3; Ex. A. Plaintiff responded that she had told the union that she did not want to join. Id. This evidence shows that Plaintiff was eligible for the union at least at some point prior to January 2013.

Even assuming that Plaintiff did not become a union member until January 2013, Plaintiff has not shown that actual union membership is necessary for Labor Code section 514 to apply. The

---

[2] Plaintiff also argues that the new CBA, which took effect after the prior one expired on December 19, 2012, has not been finalized. Opp. at 4. However, hospital employees are not without a CBA. See Green Decl. ¶ 5 ("The CBA that was in effect at the time of [plaintiff's] hire was effective on its face from December 19, 2009 to December 19, 2012. Prior to the expiration date, Eden Medical Center and the SEIU reached an agreement on a successor CBA, and the new agreement was ratified by the SEIU membership. The Successor CBA has not yet been finalized and published. However, since the expiration of the old contract, and carrying over to the changeover to SMCCV, the parties have continued to operate under all the terms of the old contract, as modified by the changes adopted in the newly-ratified agreement."). Plaintiff offers no evidence to the contrary.

6

statute does not so provide and Plaintiff has not cited any case so holding.  As Defendant points out, it would make little sense to allow employees to personally exempt themselves from section 514 by withholding dues or paying them late, as long as their employer applies the CBA's wage, hour and pay provisions to them.  Moreover, the Associate Director of Human Resources testified that the terms of the CBA have applied to Plaintiff's employment since her hire date whether or not she was a union member.  Reply Green Decl. ¶ 3.  Plaintiff has provided no evidence to the contrary.

Accordingly, Plaintiff's California overtime claim (third claim) is barred by California Labor Code section 514.  The Court need not reach Defendant's alternative argument that there is no triable issue of fact as to Plaintiff's California overtime claim.

**2.  There is no triable issue of fact as to Plaintiff's fourth claim for overtime compensation under the Fair Labor Standards Act.**

The Fair Labor Standards Act requires overtime pay "at a rate not less than one and one-half times the regular rate." 29 U.S.C. § 207(a)(1).  Further, under the Code of Federal Regulations:

> Where an employee in a single workweek works at two or more different types of work for which different nonovertime rates of pay (of not less than the applicable minimum wage) have been established, his regular rate for that week is the weighted average of such rates. That is, his total earnings (except statutory exclusions) are computed to include his compensation during the workweek from all such rates, and are then divided by the total number of hours worked at all jobs.

29 C.F.R. § 778.115.

Defendant has explained how it calculated Plaintiff's overtime pay.  First, Defendant noted that Plaintiff was entitled to shift differential rates depending on when her shifts started.  Green Decl. ¶ 6; Geidt Decl. Ex. A at 104-05.  Defendant included the shift differential pay in the regular rate of pay for purposes of calculating overtime.  Green Decl. ¶ 6.  Defendant notes that the differential in this case was mandated by the CBA, not by federal law.  Plaintiff does not dispute how the applicable regular rate is calculated.

Plaintiff's overtime claim concerns one pay period ending May 5, 2012 in which Plaintiff claims that she was underpaid in the amount of $2.84.  See Geidt Decl. Ex. A at 109-110; 122-125 (Plaintiff testified in her deposition that she does not know of any other examples of when she was underpaid, and stating that she never asked the Human Resources department about how her pay rates were calculated because she "didn't look at my check stubs that much at those times," and "I'm

7

not the type to bring drama to the workplace."); Harris Decl. Ex. 12 (May 5, 2012 paycheck). In May 2012, it is undisputed that Plaintiff's base rate was $23.85, her swing-shift rate was $24.85 and her night-shift rate was $25.10. Green Decl. ¶ 7; Geidt Decl. Ex. A at 103; 114-15 (Plaintiff testified that she has no information that these were not the applicable rates).

According to Plaintiff's May 5, 2012 paycheck, she worked a total of 58.50 hours during the pay period. See Harris Decl. Ex. 12. The parties agree that pursuant to the time sheets attached to the exhibit, Plaintiff worked eight hours in the first week of the two-week pay period, and 50.50 hours in the second week of the pay period. Id. For the regular hours, there is no dispute that Plaintiff's regular rate was $25.10 for the night shift. Id. She worked a total of 10.50 hours of overtime during the second week of the pay period, during the hours of 8:30 p.m. on Saturday to 7:30 a.m. on Sunday. Id. Because this was a swing shift, the regular rate for that overtime shift was $24.85. Id.; Geidt Decl. Ex. B at § 11.11.

Defendant argues that the overtime premium rate for the 10.5 hours of overtime was a blended rate reflecting the two straight-time rates that applied to her hours worked during the week, that is, $24.85 for the overtime swing shift and $25.10 for the night shifts. Defendant calculated the overtime rate as the total straight-time earnings divided by her total hours worked (to get the regular rate), divided by two (to get the half-time premium rate), multiplied by the number of overtime hours that she worked (10.5). Thus, the calculation was: $12.53 ((40 hours x $25.10) + (10.5 hours at $24.85)), divided by 50.5 hours, divided by 2, which equals $12.53 as the overtime premium rate. That overtime premium rate was then added to the base rate of $24.85 for the 10.5 overtime hours, which resulted in an overtime rate of $37.38 ($24.85 + $12.53). This amount shows on Plaintiff's paycheck as the amount she was paid for the overtime during that pay period. See Harris Decl. Ex. 12.

Plaintiff, however, argues that Defendant miscalculated Plaintiff's overtime rate. Plaintiff believes that the regular rate for the pay period was $25.10, which shows on her paycheck as the regular rate for 48 hours (i.e., not the overtime hours). Harris Decl. Ex. 12. Thus, Plaintiff argues that the correct overtime rate is $37.65, which is one and one-half times $25.10 ($25.10 x 1.5). Plaintiff argues that by paying her overtime at the reduced rate of $37.38 instead of $37.65,

8

Defendant underpaid Plaintiff in the amount of $2.84 ($0.27, the difference between $37.65 and $37.38, multiplied by 10.5 hours of overtime). However, Plaintiff does not dispute that the CBA provides that shifts beginning between 2 p.m. and 11 p.m. are paid at the swing shift rate (base rate plus $1.00), and that shifts beginning between 11 p.m. and 6:00 a.m. are paid at the night shift rate (base rate plus $1.25). The shift at issue on May 5, 2012 began at 8:30 p.m., so it was paid pursuant to the CBA at the swing shift rate. Plaintiff has cited no authority that she should have been paid for 2.5 hours at the swing shift rate and then 8 hours at the night shift rate, or that the CBA does not mandate that the rate is governed by the time of the start of the shift.

Plaintiff argues that Defendant erred in adding the overtime premium of $12.53 to the lower swing shift rate of $24.85 for an hourly rate of $37.38, and instead, Defendant should have calculated 1.5 times the "regular rate," which Plaintiff believes would be at least $37.57. Plaintiff's calculation, however, appears to use the wrong hourly rate. In Defendant's calculation (Mot. at 10, n.6), the weighted-average rate of pay was $25.05, which Plaintiff appears to use as the "regular rate," but there is no evidence that Plaintiff was ever paid an hourly rate of $25.05. The regular rate for the overtime shift, as described above, was the swing shift rate of $24.85. The weighted-average rate was calculated to obtain the overtime premium. The sum of $24.85 and $12.53 (the overtime premium) is $37.38.

Plaintiff believes that the May 5, 2012 paycheck should have 48 hours paid at $25.10, which is $1,204.80, and that there should be 2.5 hours paid at the swing shift rate of $24.85, for a total of $62.235. Plaintiff states that adding those together is $1,266.925 (the sum of the totals, however, is actually $1,267.035), and that dividing $1,266.925 by 50.5 hours gives the regular rate of $25.08, so the overtime rate should be $25.08 times 1.5, which is $37.63.[3] Plaintiff's calculation, however, is not supported by the record or by any legal authority.

Plaintiff has not raised a triable issue of fact as to the underpayment of overtime based on federal law. Plaintiff has pointed to no evidence to support her calculation of overtime pay, either under federal law or the CBA. Plaintiff does not dispute that the weighted-average method, which

---

[3] Plaintiff's calculation of the applicable overtime rate pursuant to this calculation differs from her argument that the correct rate is $37.65 because of the addition error presented by adding the 48 hours paid at $25.10 and the 2.5 hours at the swing shift rate.

9

Defendant used, is appropriate when an employee works at two hourly rates in the same workweek. 29 C.F.R. § 778.115. Defendant's motion for summary judgment on this claim is granted.

**3.     There is no triable issue of fact as to Plaintiff's claim for reporting time pay.**

The Industrial Commission Wage Order applicable to the healthcare industry provides in relevant part:

> 5. REPORTING TIME PAY
> (A) Each workday an employee is required to report for work and does report, but is not put to work or is furnished less than half said employee's usual or scheduled day's work, the employee shall be paid for half the usual *or scheduled* day's work, but in no event for less than two (2) hours nor more than four (4) hours, at the employee's regular rate of pay, which shall not be less than the minimum wage.

Wage Order 5-2001, § 5(A) (emphasis added). Reporting time pay is not owed when the cause for the interruption is not within the employer's control. Id. § 5(C)(3). Plaintiff's reporting time claim has two bases: (1) that Defendant failed to pay reporting time pay on days when Plaintiff came into work solely to attend a meeting of less than four hours' duration; and (2) that Defendant failed to pay reporting time pay when Plaintiff was scheduled to work eight hours but was sent home before working four hours.

**A.     Summary judgment is granted as to Plaintiff's reporting time pay claim regarding attendance at meetings**

Defendant acknowledges that it did not pay reporting time pay on days when Plaintiff came into work solely to attend a scheduled meeting. Instead, she received pay for the time that she attended the meeting. Green Decl. ¶ 8; Geidt Decl. Ex. A at 218. Defendant argues that this is because when she came into work for a scheduled meeting, she was furnished and paid at least half of her (short) scheduled day, and indeed was paid all of her scheduled hours for the duration of the meeting, so no reporting time pay was required. As an example of Defendant's failure to pay reporting time, Plaintiff points to a meeting scheduled for February 8, 2012 for which she was paid 1.25 hours. Harris Decl. Ex. 8. This meeting was labeled as an inservice meeting on the timesheet. Id. Plaintiff argues that she should have been paid for two hours of work under the reporting time pay rule.

The California appellate court has recently answered the question raised by Plaintiff: "If an employee's only scheduled work for the day is a mandatory meeting of one and a half hours, and the

10

1  employee works a total of one hour because the meeting ends a half hour early, is the employer

2  required to pay reporting time pay pursuant to subdivision 5(A) of Wage Order 4 in addition to the

3  one hour of wages?" Aleman v. Airtouch Cellular, 209 Cal.App.4th 556, 569 (2012). The court

4  answered the question in the negative:

> The answer to this question is no, because the employee was furnished work for more than half the scheduled time. The employee would be entitled to receive one hour of wages for the actual time worked, but would not be entitled to receive additional compensation as reporting time pay. Although somewhat lengthy and cumbersome, Wage Order 4's reporting time pay provision is not ambiguous. There is only one reasonable interpretation of subdivision 5(A) as it pertains to scheduled work—when an employee is scheduled to work, the minimum two-hour pay requirement applies only if the employee is furnished work for less than half the scheduled time.
>
> This conclusion directly addresses Krofta's reporting time pay claim. Each period of work at issue, including meetings, was scheduled (at least four days in advance), and Krofta always worked at least half the duration of each period.

Id. at 569-70. The Aleman court further stated:

> Krofta's interpretation of subdivision 5(A)—that "in no event shall an employer pay an employee for less than two hours of work when [the employee] is required to report"—improperly dispenses with a significant portion of the rule. If the entirety of subdivision 5(A) read "[e]ach workday an employee is required to report for work and does report, [...] the employee shall be paid [...], in no event for less than two (2) hours ..." then Krofta's interpretation would be correct. But this is not how the provision reads. The right to at least two hours of wages is conditional—it is dependent on the antecedent that an employee "is not put to work or is furnished less than half said employee's usual or scheduled day's work." (Cal.Code Regs., tit. 8, § 11040, subd. 5(A).) A reading that disregards this condition would render words of the provision meaningless, a result prohibited by the rules of statutory construction. (Singh v. Superior Court, supra, 140 Cal.App.4th at p. 392, 44 Cal.Rptr.3d 348.) Every time Krofta was scheduled to report to work (whether for a meeting or otherwise), he was furnished at least half the scheduled day's work. He was therefore entitled to receive wages compensating him for the actual time worked, but was not owed reporting time pay.

Id. at 570.

Here, there is no dispute that the meetings were scheduled in advance, that Plaintiff was compensated for the amount of time spent in the meetings, and that the meetings lasted at least one-half as long as scheduled. Geidt Decl. Ex. A at 215, 217-18. Thus, under Aleman, Plaintiff is not owed any reporting time pay for attending the meetings.

Plaintiff urges this Court to disregard Aleman as inconsistent with state Supreme Court decisions requiring labor laws to be liberally construed to protect employees. See Ramirez v.

11

Yosemite Water Co., 20 Cal.4th 785, 794 (1999) (" First, 'past decisions ... teach that in light of the remedial nature of the legislative enactments authorizing the regulation of wages, hours and working conditions for the protection and benefit of employees, the statutory provisions are to be liberally construed with an eye to promoting such protection.'") (internal citation omitted); Murphy v. Kenneth Cole Prods., Inc., 40 Cal.4th 1094, 1103 (2007) ("We have also recognized that statutes governing conditions of employment are to be construed broadly in favor of protecting employees."); Martinez v. Combs, 49 Cal.4th 35, 61 (2010) ("'Moreover, past decisions ... teach that in light of the remedial nature of the legislative enactments authorizing the regulation of wages, hours and working conditions for the protection and benefit of employees, the statutory provisions are to be liberally construed with an eye to promoting such protection.'") (internal citation omitted). Of these cases cited by Plaintiff, only one, Murphy, addresses the reporting time pay rule, and the Aleman court persuasively distinguished that case:

> Krofta points out that statutes governing employment conditions are liberally construed in favor of protecting employees. (Murphy v. Kenneth Cole Productions, Inc. (2007) 40 Cal.4th 1094, 1103, 56 Cal.Rptr.3d 880, 155 P.3d 284 (Murphy).) While this is true, a general policy of liberal construction does not lead us to a different result here. (See Arnett v. Dal Cielo, supra, 14 Cal.4th at pp. 24–25, 56 Cal.Rptr.2d 706, 923 P.2d 1 [a general policy of broad construction is not of significant consequence when a statute is only susceptible of one reasonable interpretation].) The clear language of subdivision 5(A) dictates that when work is scheduled, reporting time is owed only when an employee is not furnished with half of his or her scheduled day's work. Liberally construing the language does not change this result.

Aleman, 209 Cal.App.4th at 571. Thus, Plaintiff has not raised a triable issue of fact that the reporting time pay rule would apply to the meetings that Plaintiff attended.

**B.     Summary judgment is granted as to Plaintiff's reporting time pay claim regarding not working a full shift**

Defendant's policy and practice is to pay four hours of reporting time if it schedules an employee for an eight-hour shift and provides less than four hours of work. Green Decl. ¶ 8. Defendant can record this reporting time pay under a special pay code (#134) if the additional pay is not otherwise recorded as regular wages. Id. Defendant is also contractually obligated to pay for four hours when an employee reports for work but no work is available. Id.; Geidt Decl. Ex. B at § 14. Defendant's supervisor, Hawley, is unaware of any instance in which Plaintiff reported for work

12

on an eight-hour shift and was sent home by the hospital early without receiving four hours of pay. Hawley Decl. ¶ 3. Plaintiff never brought any instance to Hawley's attention. Id.; Geidt Decl. Ex. A at 178.

Plaintiff states that her usual work day was eight hours. Harris Decl. Ex. 1 at 131. Plaintiff argues that because none of Plaintiff's wage statements include the code #134 used for reporting time pay, Defendant did not pay reporting time pay. However, Green testified that reporting time can be coded as either #134 or as regular pay. Green Decl. ¶ 8. The absence of the code does not raise a triable issue of fact that Defendant failed to pay reporting time pay.

Plaintiff believes that she was denied reporting time pay on two occasions. Plaintiff claims that on September 14, 2011, she was only paid for 3.75 hours of her usually scheduled eight-hour day. Harris Decl. Ex. 6. She also states that on March 25, 2012, her eight-hour shift on that day was cut short, and she was sent home after only performing three hours of work, but not paid for four hours. Harris Decl. Ex. 2. These are the only two dates that Plaintiff points to as qualifying for reporting time pay.

Plaintiff has failed to raise a triable issue of fact as to these dates. She provides no evidence that she was actually scheduled to work eight hours on those days, relying solely on her general testimony that she was usually scheduled for eight hours. Further, Plaintiff has presented no evidence that the hospital sent her home before the four-hour mark, as opposed to Plaintiff opting to leave early. As to the September 2011 date, Plaintiff testified at her deposition that she didn't recall specifically what the circumstances were for her leaving work early:

Q: Well, Ms. Loud, do you recall specifically what happened on that morning?

A: I do not recall specifically what happened on September 11th [sic], 2011, and it's 2013 now.

Q: Okay. You went home early, you - apparently, right?

A: Yes.

Q: Okay. And you just don't remember what the circumstances were, do you?

A: No.

Geidt Decl. Ex. A at 223-24. In addition, Plaintiff testified:

Q: All right. This night of September 14th, 2011 could have been one of those times

13

when the charge nurse just said, "Hey, do you want to go home? You know, fine. If you want to stay, that's fine, too" right?

A: I mean, I can't go back that far, but maybe.

Id. at 226-27.

With respect to the March 25, 2012 date, Plaintiff testified that she did not remember anything about that night, including why she only worked three hours, although she speculated that "most likely, it was probably if it's that late, they probably called me and asked me to come in, and then realized that the census was down and sent me home." Geidt Decl. Ex. A at 229. She also admitted that she could only speculate. Id. at 230 ("I'm speculating that's what probably - what happened.").

Plaintiff also testified that she could not identify any other days on which she claimed to be due reporting time pay for working less than four hours on a scheduled eight-hour day. Geidt Decl. Ex. A at 231. Plaintiff could not identify anyone who sent her home before she had worked at least four hours. Id. at 232-33. Accordingly, Plaintiff has not raised a triable issue of fact as to this claim.

### 4. There is no triable issue of fact as to Plaintiff's claim for allegedly deficient wage statements.

Labor Code § 226(a) specifies what an employee's wage statement must include:

> (a) Every employer shall, semimonthly or at the time of each payment of wages, furnish each of his or her employees, either as a detachable part of the check, draft, or voucher paying the employee's wages, or separately when wages are paid by personal check or cash, an accurate itemized statement in writing showing (1) gross wages earned, (2) total hours worked by the employee, except for any employee whose compensation is solely based on a salary and who is exempt from payment of overtime under subdivision (a) of Section 515 or any applicable order of the Industrial Welfare Commission, (3) the number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis, (4) all deductions, provided that all deductions made on written orders of the employee may be aggregated and shown as one item, (5) net wages earned, (6) the inclusive dates of the period for which the employee is paid, (7) the name of the employee and only the last four digits of his or her social security number or an employee identification number other than a social security number, (8) the name and address of the legal entity that is the employer and, if the employer is a farm labor contractor, as defined in subdivision (b) of Section 1682, the name and address of the legal entity that secured the services of the employer, and (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee and, beginning July 1, 2013, if the employer is a temporary services employer as defined in Section 201.3, the rate of pay and the total hours worked for each temporary services assignment. The deductions made from payment of wages shall be recorded in ink or other indelible form, properly dated, showing the month, day, and year, and a copy of the statement and the record of the deductions shall be kept on file by the employer for at least three years at the place of employment or at a

14

central location within the State of California.

Cal. Labor Code § 226(a).

At her deposition, Plaintiff verified that her wage statements addressed all of the requirements of section 226(a). Geidt Decl. Ex. A at 233-35. Plaintiff did not testify as to any information on the wage statements that was inaccurate or incorrect. Id. at 235-39. She stated only that the wage statements were "confusing." Id. at 236. Thus, Plaintiff has not raised a triable issue of fact as to whether the wage statement complies with the requirements of section 226(a).

Moreover, even if the wage statements did not comply with section 226(a), Plaintiff has not raised a triable issue of fact that she has suffered an injury caused by the paychecks. Section 226(e) governs the injury component of Plaintiff's claim. The current version of section 226(e), which was effective as of January 2013, states:

> (e)(1) An employee suffering injury as a result of a knowing and intentional failure by an employer to comply with subdivision (a) is entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not to exceed an aggregate penalty of four thousand dollars ($4,000), and is entitled to an award of costs and reasonable attorney's fees.
>
> (2)(A) An employee is deemed to suffer injury for purposes of this subdivision if the employer fails to provide a wage statement.
>
> (B) An employee is deemed to suffer injury for purposes of this subdivision if the employer fails to provide accurate and complete information as required by any one or more of items (1) to (9), inclusive, of subdivision (a) and the employee cannot promptly and easily determine from the wage statement alone one or more of the following:
>
> (I) The amount of the gross wages or net wages paid to the employee during the pay period or any of the other information required to be provided on the itemized wage statement pursuant to items (2) to (4), inclusive, (6), and (9) of subdivision (a).
>
> (ii) Which deductions the employer made from gross wages to determine the net wages paid to the employee during the pay period. Nothing in this subdivision alters the ability of the employer to aggregate deductions consistent with the requirements of item (4) of subdivision (a).
>
> (iii) The name and address of the employer and, if the employer is a farm labor contractor, as defined in subdivision (b) of Section 1682, the name and address of the legal entity that secured the services of the employer during the pay period.
>
> (iv) The name of the employee and only the last four digits of his or her social security number or an employee identification number other than a social security number.

(C) For purposes of this paragraph, "promptly and easily determine" means a reasonable person would be able to readily ascertain the information without reference to other documents or information.

(3) For purposes of this subdivision, a "knowing and intentional failure" does not include an isolated and unintentional payroll error due to a clerical or inadvertent mistake. In reviewing for compliance with this section, the factfinder may consider as a relevant factor whether the employer, prior to an alleged violation, has adopted and is in compliance with a set of policies, procedures, and practices that fully comply with this section.

Cal. Lab. Code § 226(e). The version of section 226(e) in effect prior to January 2013 stated:

(e) An employee suffering injury as a result of a knowing and intentional failure by an employer to comply with subdivision (a) is entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not exceeding an aggregate penalty of four thousand dollars ($4,000), and is entitled to an award of costs and reasonable attorney's fees.

Cal. Labor Code § 226(e) (2012 version).

With respect to the January 2013 amendment of section 226(e), one court has stated:

The court is reinforced in this interpretation of the injury requirement by the recent statutory amendment to Section 226 clarifying the injury requirement by providing a statutory definition. Section 226(e) now states that "[a]n employee is deemed to suffer injury ... if the employer fails to provide accurate and complete information as required by one or more of [the section (a) requirements] and if the employee cannot promptly and easily determine from the wage statement alone ... (I) The amount of gross wages or net wages ... (ii) Which deductions the employer made from gross wages to determine the net wages ..." Cal. Labor Code § 226(e). The Senate Bill Analysis indicates that because of the "contradictory and inconsistent interpretations of what constitutes 'suffering injury' ... in the various court cases ... it is necessary to provide further clarity on the issue ..." SB 1255 Bill Analysis, http://www.leginfo.ca.gov/pub/11–12/bill/sen/sb_1251–1300/sb_ 1255_c fa_20120828_175021_sen_floor.html.

Escano v. Kindred Healthcare Operating Co., 2013 WL 816146, at *12 (C.D. Cal. Mar. 5, 2013).

Further:

As discussed above, existing law requires an employer to provide workers with an accurate itemized wage statement that lists specified information. Existing law also provides that an employee that "suffers injury" as a result of an employer's failure to comply with these requirements is entitled to recover statutory damages. In recent years, courts have grappled with defining what "suffering injury" means for purposes of these provisions - different courts have taken vastly different views as to the meaning of this term.

This bill attempts to legislate a compromise by clearly delineating which types of "true" violations will constitute "suffering injury."

16

SB 1255 Bill Analysis (found at: http://www.leginfo.ca.gov/pub/11-12/bill/sen/sb_1251-1300/sb_1255_cfa_20120618_114738_asm_comm.html).

The injury requirement in section 226(e) is not satisfied simply because one of the nine itemized requirements in section 226 (a) is missing. See Price v. Starbucks Corp., 192 Cal.App.4th 1136, 1142-43 (2011) (citing Jaimez v. DAIOHS USA, Inc., 181 Cal.App.4th 1286, 1306 (2010); see also Elliot v. Spherion Pacific Work, LLC, 572 F.Supp.2d 1169, 1181 (C.D. Cal. 2008)). The injury requirement is minimal. See Escano, 2013 WL 816146, at *12. However, the requirement of "suffering injury" precludes an employee from recovering for violations of section 226(a) unless he or she demonstrates an injury arising from the missing information that is more than the "deprivation of information" standing alone. See Price, 192 Cal.App.4th at 1142 (quoting Jaimez v. DAIOHS USA, Inc., 181 Cal.App.4th at 1306–1307).

Plaintiff argues that because Escano stated that the January 2013 amendment was merely a clarification of the statute, the statute as amended also applies to pre-amendment conduct (i.e., pre-2013 paychecks in this case). See Carter v. Cal. Dep't of Veterans' Affairs, 38 Cal.4th 914, 923 (2006) ("A statute that merely clarifies, rather than changes, existing law is properly applied to transactions predating its enactment. However, a statute might not apply retroactively when it substantially changes the legal consequences of past actions, or upsets expectations based in prior law.") (internal citation omitted). Escano did not address the issue of retroactivity. Further, a "statute may be applied retroactively only if it contains express language of retroactivity or if other sources provide a clear and unavoidable implication that the Legislature intended retroactive application." Myers v. Philip Morris Companies, Inc., 28 Cal.4th 828, 844 (2002); Id. at 841 (". . . unless there is an 'express retroactivity provision, a statute will *not* be applied retroactively unless it is *very clear* from extrinsic sources that the Legislature ... must have intended a retroactive application'") (emphasis in original) (internal citation omitted). The Court, however, need not reach the retroactivity issue because Plaintiff cannot show any deficiency in the paychecks regardless of which definition applies.

First, Plaintiff argues that Defendant's wage statements are defective because they do not

provide the name and address of the legal entity that is the employer. Cal. Labor Code § 226(a)(8). For example, Plaintiff argues that the statement does not indicate whether the employer is a corporation, partnership or LLC: "The name of the legal entity that is the employer is a mystery." Opp. at 17. Plaintiff argues that she is deemed to have suffered any injury because "an employee is deemed to suffer injury for purposes of this subdivision if the employer fails to provide accurate and complete information as required by any one or more of the items (1) to (9) inclusive." Cal. Labor Code § 266(e)(2)(B). Plaintiff, however, only cites part of the statute, which also states in relevant part that: "An employee is deemed to suffer injury for purposes of this subdivision if the employer fails to provide accurate and complete information as required by any one or more of items (1) to (9), inclusive, of subdivision (a) *and the employee cannot promptly and easily determine from the wage statement alone one or more of the following . . . .*" Id. (emphasis added). Further, the injury requirement is not satisfied simply because one or more of the requirements of section 226(a) are missing. Price v. Starbucks Corp., 192 Cal.App.4th 1136, 1142-43 (2011). In addition, Plaintiff provides no evidence that the name of the employer was a "mystery." In fact, each paycheck has the name of the hospital, either "Eden Medical Center" or "Sutter Medical Center Castro Valley." Geidt Decl. Ex. E, G; Messman Decl. ¶¶ 2-3, Ex. A, B (providing evidence of the corporate transaction from Eden Medical Center to Sutter Medical Center Castro Valley). Although the employer's name does not indicate its corporate status on the wage statement, Plaintiff has not shown that the corporate status is a material issue, and therefore, Plaintiff not raised a triable issue of fact that the wage statement failed to show the employer's name and address or that she suffered an injury under either the former or current version of the statute.

Second, Plaintiff argues that her wage statements often omit the hourly rate that Defendant relied on in computing the regular rate involved in the determination of the amount of overtime wages owed. Plaintiff states that: "No reasonable person would possibly know the actual hourly rates involved in Defendant's computation of the overtime amount owing on wage statements such as that provided to Loud in connection with her wages for the pay period of April 22, 2012 to May 5, 2012." Opp. at 17. All of the paychecks include all applicable hourly rates worked in the pay period. See, e.g., Geidt Decl. Ex. G. Defendant acknowledges that the April 22, 2012 to May 5,

18

2012 paycheck reflected the overtime hours as a combination of the base rate and the blended half-time premium rate rather than breaking them into separate components. Reply at 12. However, nothing in section 226 prohibits an employer from following this approach; the statute requires the employer to show the applicable hourly rates and the hours worked at each rate, which Defendant did for Plaintiff's paychecks. That Plaintiff may have been confused does not rise to the level of injury, even under the amended statute. See, e.g., Price, 192 Cal.App.4th at 1142-43 ("[Plaintiff], and the class he seeks to represent, was allegedly injured because they have been deprived of the requisite information on their wage statements. This lack of information 'caused confusion and possible underpayment of wages due,' required the putative class to file this lawsuit, and forced the putative class to attempt to reconstruct their time and pay records," but the court determined that these allegations did not support a finding of injury); York v. Starbucks Corp., 2011 U.S. Dist. LEXIS 118310, at *10-11 (C.D. Cal. Aug. 5, 2011) ("Here, Plaintiff purportedly suffered injuries because she was confused by the wage statements, had to add up her overtime and regular hours, and felt that she could not accurately determine her pay and what she was owed when the statements did not list the overtime rate of pay, even though she was aware that the overtime rate of pay was a time and a half her hourly rate. Under similar circumstances, the court in Price held that this is 'not the type of mathematical injury that requires computations to analyze whether the wages paid in fact compensated [her] for all hours worked.' Specifically, consistent with Price, Plaintiff would not be considered to have suffered an injury, within the meaning of section 226(e), simply because she had to perform basic math by adding the overtime and regular hours together, ensure that her overtime rate of pay was correct, and speculate on the possibility that she may have been underpaid. Instead, she would have to show that the information on her wage statement was either inaccurate or incomplete, i.e., it did not contain the hours worked or the regular hourly rate.") (internal citations omitted). Because there is no triable issue of fact as Plaintiff's overtime pay on this paycheck, she has not raised a triable issue of fact as to injury under either version of the statute, particularly in light of her admission that she "never really paid attention" to her check stubs and never bothered to ask anyone to clarify any questions or alleged confusion about her checks before filing this lawsuit. See Geidt Decl. Ex. A at 109-110; Hawley Decl. ¶ 4.

19

Third, Plaintiff argues that during the pay period from November 6, 2011 through November 19, 2011, she worked for 74.25 hours, but her wage statement only reported 73.25 hours. Harris Decl. Ex. 11. Plaintiff cites no evidence for the argument that she worked 74.25 hours, rather than 73.25 hours, during this pay period. Id. Even if there were such an error, however, that one error would not support a lawsuit for violation of section 226, which requires a "knowing and intentional" failure: "For purposes of this subdivision, a 'knowing and intentional failure' does not include an isolated and unintentional payroll error due to a clerical or inadvertent mistake." Cal. Labor Code § 226(e)(3). Thus, Plaintiff has not raised a triable issue of fact as to a violation of section 226.

**Conclusion**

Defendant's Motion for Partial Summary Judgment is granted. To the extent that Plaintiff's PAGA claim is based on the four claims at issue in this motion, it can no longer be asserted on that basis. See Martinez v. Antique & Salvage Liquidators, 2011 WL 500029, at *8 (N.D. Cal. Feb. 8, 2011) (". . . PAGA allows aggrieved individuals to recover 'civil penalties' for violations of underlying Labor Code provisions.").

**IT IS SO ORDERED.**

Dated: August 27, 2013

ELIZABETH D. LAPORTE
United States Chief Magistrate Judge